UNITED STATES of America,
Plaintiff–Appellee,

v.

9844 SOUTH TITAN COURT, UNIT 9, LITTLETON, COLORADO, with all improvements, appurtenances, fixtures, and attachments thereon, and the rents, profits, and proceeds therefrom; Jewelry Located at 9844 South Titan Court, Unit 9, Littleton, CO, named: All Jewelry, Cash, Cashier's Checks, Money Orders, Traveler's Checks, Stock and Mutual Fund Certificates, Bonds, Financial Instruments, Negotiable Instruments, Cameras, Consumer Electronic Equipment (including but not limited to VCRs, televisions, stereos, CD players, personal computers, lap-top computers) and Cellular Telephones, located at 9844 South Titan Court, Unit 9, Littleton, Colorado; 9844 South Titan Court, Unit 10, Littleton, Colorado, with all improvements, appurtenances, fixtures and attachments thereon, and the rents, profits, and proceeds therefrom; Jewelry Located at 9844 South Titan Court, Unit 10, Littleton, CO, named: All Jewelry, Cash, Cashier's Checks, Money Orders, Traveler's Checks, Stock and Mutual Fund Certificates, Bonds, Financial Instruments, Negotiable Instruments, Cameras, Consumer Electronic Equipment (including but not limited to VCRs, televisions, stereos, CD players, personal computers, lap-top computers) and Cellular Telephones, located at 9844 South Titan Court, Unit 10, Littleton, Colorado; 1277 South Memphis Street, Aurora, Colorado, with all improvements, appurtenances, fixtures, and attachments thereon, and the rents, profits, and proceeds therefrom; Jewelry Located at 1277 South Memphis Street, Aurora, CO, named: All Jewelry, Cash, Cashier's Checks, Money Orders, Traveler's Checks, Stock and Mutual Fund Certificates, Bonds, Financial Instruments, Negotiable Instruments, Cameras, Consumer Electronic Equipment (including but not limited to VCRs, televisions, stereos, CD players, personal computers, lap-top computers) and Cellular Telephones, located at 1277 South Memphis Street, Aurora, Colorado; 4 Winged Foot Way, Aurora, Colorado, with all appurtenances, fixtures, and attachments thereon, and the rents, profits, and proceeds therefrom; Jewelry Located at 4 Winged Foot Way, Aurora, CO, named: All Jewelry, Cash, Cashier's Checks, Money Orders, Traveler's Checks, Stock and Mutual Fund Certificates, Bonds, Financial Instruments, Negotiable Instruments, Cameras, Consumer Electronic Equipment (including but not limited to VCRs, televisions, stereos, CD players, personal computers, lap-top computers) and Cellular Telephones, located at 4 Winged Foot Way, Aurora, Colorado; 17316 East Rice Circle, Unit E, Aurora, Colorado, with all improvements, appurtenances, fixtures, and attachments thereon, and the rents, profits, and proceeds therefrom; $2,034.66 In Account No. 2001772, United Bank of Highlands Ranch, Colorado, plus interest, and all records relating thereto; $26.31 In Account No. 46015777 Columbia Savings Hampden Branch, Denver, CO, plus interest and all records relating thereto; $2,800.00 Seized From 1277 South Memphis Street, Aurora, CO; $13,050.00 Seized From Lisa M. Tarasuik, incident to her arrest at No Frills

Bar & Grill; Honda Civic 1987 VIN # JHMCA5540HC04457, and attachments thereon and accessories thereto, including but not limited to all mobile and Cellular Telephones, and CB Radios, Defendants.

Door & Trim Systems, Inc.; Eric May, individually and as an officer and stockholder in Door & Trim Systems, Inc.; Francis A. May, individually, and as an officer and stockholder in Door & Trim Systems, Inc. and as legal guardian for the minor children, Angela May and Jeffrey May, Claimants,

and

Phillip May, Claimant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Francis A. MAY, as an officer and stockholder in Door & Trim Systems, Inc. and as legal guardian for the minor children, Angela May and Jeffrey May, Claimant–Appellant,

and

9844 South Titan Court, Unit 9, Littleton, Colorado, with all improvements, appurtenances, fixtures, and attachments thereon, and the rents, profits, and proceeds therefrom; Jewelry Located at 9844 South Titan Court, Unit 9, Littleton, CO., named: All Jewelry, Cash, Cashier's Checks, Money Orders, Traveler's Checks, Stock and Mutual Fund Certificates, Bonds, Financial Instruments, Negotiable Instruments, Cameras, Consumer Electronic Equipment (including but not limited to VCRs, televisions, stereos, CD players, personal computers, lap-top computers) and Cellular Telephones, located at 9844 South Titan Court, Unit 9, Littleton, Colorado; 9844 South Titan Court, Unit 10, Littleton, Colorado, with all improvements, appurtenances, fixtures and attachments thereon, and the rents, profits, and proceeds therefrom; Jewelry Located at 9844 South Titan Court, Unit 10, Littleton, CO, named: All Jewelry, Cash, Cashier's Checks, Money Orders, Traveler's Checks, Stock and Mutual Fund Certificates, Bonds, Financial Instruments, Negotiable Instruments, Cameras, Consumer Electronic Equipment (including but not limited to VCRs, televisions, stereos, CD players, personal computers, lap-top computers) and Cellular Telephones located at 9844 South Titan Court, Unit 10, Littleton, Colorado; 1277 South Memphis Street, Aurora, Colorado, with all improvements, appurtenances, fixtures, and attachments thereon, and the rents, profits, and proceeds therefrom; Jewelry Located at 1277 South Memphis Street, Aurora, CO, named: All Jewelry, Cash, Cashier's Checks, Money Orders, Traveler's Checks, Stock and Mutual Fund Certificates, Bonds, Financial Instruments, Negotiable Instruments, Cameras, Consumer Electronic Equipment (including but not limited to VCRs, televisions, stereos, CD players, personal computers, lap-top computers) and Cellular Telephones, located at 1277 South Memphis Street, Aurora, Colorado; 4 Winged Foot Way, Aurora, Colorado, with all appurtenances, fixtures, and attachments thereon, and the rents, profits, and proceeds therefrom; Jewelry Located at 4 Winged Foot Way, Aurora, CO, named: All Jewelry, Cash, Cashier's Checks, Money Orders, Traveler's Checks, Stock and Mutual Fund Certificates, Bonds, Financial Instruments, Negotiable Instruments, Cameras, Consumer Electronic Equipment (including but not limited to VCRs, televisions, stereos, CD players, personal computers, lap-top computers) and Cellular Telephones, located at 4 Winged Foot Way, Aurora, Colorado; 17316 East Rice Circle, Unit E, Aurora, Colorado, with all improvements, appurtenances, fixtures, and attachments thereon, and the rents, profits, and proceeds therefrom; $2,034.66 In Account No. 2001772, United Bank of Highlands Ranch, Colorado, plus interest, and all records relating thereto; $26.31 In Account No. 46015777 Columbia Savings Hampden Branch,

Denver, CO, plus interest and all records relating thereto; $2,800.00 Seized From 1277 South Memphis Street, Aurora, CO; $13,050.00 Seized From Lisa M. Tarasuik, incident to her arrest at No Frills Bar & Grill; Honda Civic 1987 VIN # JHMCA5540HC04457, and attachments thereon and accessories thereto, including but not limited to all mobile and Cellular Telephones, and CB Radios, Defendants,

Door & Trim Systems, Inc.; Eric May, individually and as an officer and stockholder in Door & Trim Systems, Inc.; Phillip May, Claimants.

Nos. 94–1285, 94–1290.

United States Court of Appeals,
Tenth Circuit.

Feb. 5, 1996.

Brenda G. Grantland, Mill Valley, California, appearing for Appellants Philip May and Francis May.

Mark S. Pestal, Assistant United States Attorney (Henry L. Solano, United States Attorney, with him on the briefs), District of Colorado, Denver, Colorado, appearing for Plaintiff–Appellee United States of America.

Before SEYMOUR, Chief Judge, HENRY, Circuit Judge, and COOK *, Senior District Judge.

HENRY, Circuit Judge.

Claimants Philip and Frances May appeal a summary judgment granted to the government in a civil forfeiture proceeding initiated under 21 U.S.C. § 881 and completed after Philip May's conviction and sentencing on related drug charges. Ms. May challenges the district court's conclusion that her "innocent owner" defense did not survive the government's motion for summary judgment. Mr. May contends that forfeiture in a pro-

---

* Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation.

ceeding separate from his criminal trial constituted double jeopardy. There is merit in both arguments. We reverse in part the judgment of the district court.

## BACKGROUND

### I. The Criminal Case

Husband and wife Philip and Frances May owned an interior design business called Door & Trim Systems, Inc., in Littleton, Colorado. On October 29, 1991, equipped with $13,050 in cash and a loaded .45 caliber pistol, Philip May went to a bar with Lisa Tarasiuk, a former employee, to buy a kilo of cocaine. The seller turned out to be an undercover police officer.

After his arrest, Philip May consented to searches of his home and business properties. To obtain his consent, the police told him that he could stop the searches at any time. The police first took him to his home at 1277 South Memphis Street, where he let the police in and retrieved the keys to his business. The police then took him away and continued their search, which produced two guns, roughly 165 grams of cocaine, and $2,800 in cash.

The police then took Mr. May to his business property, Units 9 and 10 of 9844 South Titan Court. These were adjacent units in an industrial condominium; the Mays had removed the wall between the two and used the enlarged space to house tools and machinery. Mr. May again consented in writing to the search. The police again took him away, then searched Units 9 and 10. In Unit 9 they found roughly fifty-five grams of co-

caine, a triple beam scale, and a cocaine grinder. They found nothing in Unit 10.

Philip May was indicted on January 28, 1992, and tried for possession of cocaine with intent to distribute, conspiracy to distribute, attempted possession with intent to distribute, and carrying a firearm during a drug offense. On June 18, 1992, he was convicted on all counts. On September 4, 1992, he was sentenced to ten years' imprisonment, a $12,500 fine, and an assessment for the cost of incarceration estimated at $100,000. Frances May was never arrested or charged with any crime.

### II. The Forfeiture Case

The government recorded notice of lis pendens against the real property in March, 1992. The government filed a forfeiture action on July 8, 1992, after obtaining judgment in the criminal trial but before sentencing. Contending that the property was connected with the sale and distribution of controlled substances under 21 U.S.C. § 881(a)(6) and (a)(7),[1] the government sought forfeiture of the following:

(1) The May home at 1277 South Memphis in Aurora, Colorado, jointly owned by Mr. and Mrs. May.

(2) The business property, Units 9 and 10 at 9844 South Titan Court in Littleton. Mr. and Mrs. May jointly owned Unit 10. Unit 9 was purchased with marital funds but was titled in Philip's name only.

(3) The $13,050 in cash that Philip had with him when he was arrested.

---

1. 21 U.S.C. § 881(a) provides that the following items

 shall be subject to forfeiture to the United States and no property right shall exist in them.
 . . . .
 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or

omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

(4) The $2,800 in cash found in the May home.

Philip May, Frances May, and their son Eric filed claims to the property.

Before trial, Mr. May filed two pro se motions to suppress evidence found in his home and business property, arguing that he was unable to stop the searches as promised once the police took him from the search sites. The court denied the motions.

The government then moved for summary judgment as to all the property. Frances May opposed the motion, alleging that she was an innocent owner, and filed her own motion for summary judgment as to her claimed share of all the above items. Philip May also opposed the government's motion, arguing that Unit 10 was not forfeitable, and that forfeiture in addition to his criminal penalties would constitute excessive punishment under the Eighth Amendment. On April 27, 1994, the district court granted summary judgment for the government as to all the property listed above. Mr. May filed a notice of appeal on June 17, 1994. Mr. May later filed a supplemental brief in which he argued for the first time in the litigation that the civil forfeiture proceeding constituted double jeopardy.

## DISCUSSION

### I. Frances May's Claims to the Property

We turn first to Ms. May's contention that she was an innocent owner.[2] In opposition to the government's motion for summary judgment and in support of her own motion, she first argued that she had a property interest in the following: her home, Units 9 and 10, the $13,050 Mr. May was carrying when arrested, and the $2,800 the police found in their house. She asserted an interest in the home and Unit 10 based on her joint ownership of those properties. She asserted a half interest in Unit 9 as marital property, alleging that it was purchased with marital funds and had been erroneously titled in Mr. May's name only. She also claimed half of the $13,050 as marital property, arguing that it

was derived from funds originally deposited in their joint account. Finally, she asserted sole ownership of the $2,800, arguing that it had been her share of the proceeds from the sale of a jointly owned vehicle.

She accompanied her motion with various documents, including an affidavit asserting that her husband's cocaine trafficking developed in connection with an extramarital affair he was having with Lisa Tarasiuk, and that she had knowledge of neither the affair nor her husband's involvement in drug trafficking. Aplt.App. vol. II, at 286–88. In addition to her claim of innocent ownership, she also asserted that Unit 10 was not forfeitable at all because no contraband was found there.

The district court denied entirely Ms. May's motion for summary judgment, holding that she had no interest in the marital property and that she had failed to establish her innocent owner defense by a preponderance of the evidence. By the same order, the court granted summary judgment for the government as to all items of defendant property.

The court dealt with Ms. May's innocent owner defense in its discussion of Units 9 and 10:

Claimant Frances May asserts an innocent owner's defense in the properties that she has an "ownership" interest in. Further, she asserts that she owns 50% of Lot 10 [sic] based on her marriage to Mr. May. While the Court is sympathetic to this argument, based on Colorado's marital property law, claimant Frances May is unable to claim an ownership interest in property where title is held only in her husband's name.

An unvested or inchoate interest in marital property is insufficient to constitute ownership under 21 U.S.C. § 881. Under Colorado law, a spouse's right to the other spouse's property does not vest until death or divorce. In Re Questions Submitted by United States District Court, [184 Colo. 1] 517 P.2d 1331, 1333 (Colo.1974) (en banc).

2. 21 U.S.C. § 881(a)(6) and (7), contain identical provisions allowing innocent owners of otherwise forfeitable property to avoid forfeiture by establishing their innocence by a preponderance of the evidence.

. . . .

A spouse under Colorado law is free to dispose of his or her property in any manner as no interest in the other spouse vests until divorce. Thus, she cannot maintain a claim for any interest the properties [sic]. Claimant Frances May is not entitled to summary judgment on her innocent-owner defenses as they have not been established by a preponderance of the evidence.

Order Regarding Cross Motions for Summary Judgment at 11–12 (citation omitted). The court made no explicit finding on Ms. May's interest in her home, although it acknowledged that the property was jointly titled. *Id.* at 12. The district court concluded that the home was entirely subject to forfeiture because of its role in illegal activities and because Ms. May had failed to show innocent ownership by a preponderance of the evidence. The court also held that Ms. May had no interest in the $13,050. As to the $2,800 she claimed as her sole property, the court found that the money was drug-connected—as either proceeds, purchase money, or a form of facilitation—and that Mr. May was the money's sole owner. *Id.* at 13–14.

On appeal, we review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed.R.Civ.P. 56(c). *Universal Money Ctrs., Inc. v. AT & T*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994); *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

■ In a § 881 forfeiture proceeding, the government bears the initial burden of showing probable cause that the property to be forfeited was used illegally. *United States v. $149,442.43 in United States Currency*, 965 F.2d 868, 876 (10th Cir.1992). Once probable cause is established, the burden shifts to a claimant asserting an innocent owner defense

to prove, by a preponderance of the evidence, *see id.* at 877, that she was unaware of the illegal activity giving rise to the forfeiture, 21 U.S.C. § 881(a)(6), (7).

Ms. May contends on appeal that the court erred in several respects when it ruled on her innocent owner defense. First, she argues that she had a real, legally enforceable interest in the marital property (the $13,050, which she traced to funds withdrawn from their joint bank account, and Unit 9, which was allegedly purchased with marital funds). Second, she argues that the court erroneously rejected her innocent owner defense as to her interest in the jointly titled property (her home and Unit 10).[3] Third, she argues that a real controversy existed, precluding summary judgment, as to the ownership of the $2,800, or alternately that the money was Mr. May's but was also marital property.

### A. Marital Property—Unit 9 and the $13,050

Ms. May bases her claim to Unit 9 and the $13,050 on allegations that both, although not titled in her name, were derived from marital funds. She does not dispute the axiom that under Colorado law a spouse has only an "inchoate" interest in marital property titled in the other spouse. However, she contends that her inchoate interest is one that Congress meant to protect. She also contends that Colorado law allows a spouse's interest in marital property to vest at the commencement of a civil forfeiture action. Neither argument is persuasive.

#### 1. Congressional Intent to Protect Marital Interests

■ Ms. May's argument from congressional intent is based on the legislative history of the 1984 amendment to § 881(a)(6) that established the innocent owner defense. *See* Joint Explanatory Statement of Titles II and III, Pub.L. No. 95–633, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.C.C.A.N. 9518, 9522

---

**3.** Ms. May also contends that the district court's order conflated the concepts of "joint" property and "marital" property. We do not read the order in that fashion. As we outline below, the district court granted summary judgment as to the marital property based on Ms. May's lack of

an enforceable interest therein. It granted summary judgment as to the joint property pursuant to the court's determination that the government had met its probable-cause burden and that Ms. May had not proved her innocent owner defense.

(stating that "[t]he term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized"). However, this appeal to legislative history incorrectly presupposes that Congress, not the state, defines which "legal or equitable" interests are "recognizable." On the contrary, federal courts must look to state law in determining what property interests a claimant may assert. *United States v. 1980 Lear Jet*, 38 F.3d 398, 402 (9th Cir.1994); *United States v. 1977 Porsche Carrera 911*, 946 F.2d 30, 34 (5th Cir.1991). However broadly ownership may be construed in light of § 881's legislative history, it does not encompass "interests" that state law recognizes neither at law·nor in equity.[4]

### 2. Exceptions to Colorado's Rule on Marital Property

▉▉ As the district court noted, a Colorado spouse has only an inchoate interest in marital property titled in the other spouse's name. *In re Questions*, 517 P.2d at 1335. An inchoate interest is neither a present nor a vested interest, but "may ripen into a vested estate, if it is not barred, extinguished, or divested." *Galleria Towers, Inc. v. Crump Warren & Sommer, Inc.*, 831 P.2d 908, 911 (Colo.Ct.App.1991). As the district court recognized, the *In re Questions* rule generally prevents a spouse without title from asserting an interest, either legal or equitable, in marital property.

▉▉ Ms. May nonetheless argues that her inchoate interest is legally protected as an exception to Colorado's general rule on marital property, citing the following: "During the marriage, and absent any divorce action, the parties have their separate property and, *possibly subject to an exception or two*, can dispose of it as he or she desires.... That right, prior to the dissolution action *and possibly subject to an exception or two*, is completely inchoate." *In re Questions*, 517 P.2d at 1335 (emphasis added). She contends that

the institution of a civil forfeiture proceeding must count as an exception. We disagree.

*In re Questions* is concerned with characterizing for tax purposes a court-ordered transfer of property from husband to wife following divorce, and provides no explicit guidance on whether Colorado would countenance civil forfeiture among the "exception or two" to the rule stated above. However, the *In re Questions* court stated earlier in its opinion that it was following the "philosophy" of two Oklahoma cases, *Collins v. Okla. Tax Comm'n*, 446 P.2d 290 (Okla.1968), and *Sanditen v. Sanditen*, 496 P.2d 365 (Okla.1972). *In re Questions*, 517 P.2d at 1334. *Sanditen* does provide guidance on the issue. In that case, a wife sought to recover one-half of eight million dollars which her husband had given away. The Oklahoma Supreme Court concluded that the wife had no vested interest in the money, but that she nonetheless had "a contingent interest *which the law protects*." 496 P.2d at 367 (emphasis added), *quoted in In re Questions*, 517 P.2d at 1334. The *Sanditen* court went on to conclude that a wife's contingent interest would be protected in a number of circumstances: an incomplete gift depriving the wife of her inheritance rights, a pre-divorce gift intended to defeat property division, the transfer of funds so great that the husband could no longer support the wife, or the disposition of the homestead. *Sanditen*, 496 P.2d at 367. "In all of these instances the principle criteria [sic] is the fraudulent intent of the husband to deprive the wife of her marital rights as provided by statute." *Id.* at 368.

We conclude that the "exceptions" referred to in *In re Questions* were founded on the court's reading of *Sanditen* and encompass only situations evincing one spouse's fraudulent attempt to deprive the other of a legal right. *Cf. Love v. Olson*, 645 P.2d 861, 863 (Colo.Ct.App.1982) (holding that a spouse's interest vests only in the event of a "statutorily enacted contingency"). Civil forfeiture is

---

4. Nor does it encompass, as Ms. May also contends, mere "dominion and control" over property titled in another's name. Her theory is that if a drug felon's dominion and control over another's property may be used to support its forfeiture, *see, e.g., United States v. 900 Rio Vista*

Blvd., 803 F.2d 625, 630 (11th Cir.1986), her dominion and control over the marital property should give her a property interest therein. Ms. May cites no authority for this position, and we find no support for it in Colorado law.

not such a contingency, and there is no reason to suppose that Colorado intends to include civil forfeiture per se as an exception under some other theory.[5] We therefore affirm the district court's conclusion that Ms. May had no legally enforceable interest in Unit 9 or in the $13,050.

### B. Joint Property—The Home and Unit 10

As to the jointly titled property—the home and Unit 10—we reverse the summary judgment for the government and remand for further proceedings. First, we conclude that both properties are potentially forfeitable and reject Ms. May's contention that Unit 10 is not forfeitable simply because no contraband was found there. However, taking the pleadings and supporting documents as a whole, we conclude that there was a genuine issue of fact, precluding summary judgment, as to Ms. May's innocent owner defense.

### 1. Unit 10—Nexus with Illegal Activity

Ms. May first contends that Unit 10 is not forfeitable at all because it is a "lot or tract"[6] separate from Unit 9, where the only contraband at the business property was found. She argues further that the district court found Unit 10 forfeitable by using a "subjective" standard that impermissibly considered how the Mays used the property instead of how it was legally divided.

■ Property is forfeitable under § 881(a)(7) whenever there exists a "sufficient nexus" between the property and the illegal activity. *$149,442.43 in United States Currency,* 965 F.2d at 877; *cf. United States v. Harris,* 903 F.2d 770, 777 (10th Cir.1990) (analyzing an analogous forfeiture under 21

U.S.C. § 853(a)(2)). In this instance, whether or not the standard used by the district court was "subjective," we consider Unit 10 to have a sufficient independent nexus to the illegal activity to support forfeiture. Once the wall between Unit 9 and Unit 10 had been removed, any contraband kept in Unit 9 depended for its continued concealment at least in part on the walls surrounding Unit 10. As the district court noted, "[i]t is sufficient that the property serve to facilitate the illegal activity by concealing its presence." Order Regarding Cross Motions for Summary Judgment at 11 (citing *United States v. Smith,* 966 F.2d 1045, 1055 (6th Cir.1992)). The presence not only of fifty-five grams of cocaine, but also of a scale and cocaine grinder, suggests that the need for concealment at the business property was considerable.

### 2. Ms. May's Innocence

■ We are left with the factual question of Ms. May's innocence in relation to the illegal activity that would otherwise support forfeiture of her interest in the home and Unit 10. Ms. May contends that the government actually conceded Ms. May's innocence, that even if it did not the district court erred in granting summary judgment for the government, and that the evidence warranted summary judgment for her, not the government.[7] We agree only that the government should not have received summary judgment as to the joint property.

First, it is simply untrue that the government conceded Ms. May's innocence. While the government never presented a substantial case against Ms. May, it did not need to. Ms. May bore the burden of establishing her defense. Despite the statement in the pre-trial order, under "Claims and Defenses of

---

5. Colorado's rule on marital property in civil forfeitures is similar to that in other states. *See United States v. 717 S. Woodward St.,* 2 F.3d 529, 536 (3d Cir.1993) (Pennsylvania); *United States v. Schifferli,* 895 F.2d 987, 989 n. * (4th Cir.1990) (South Carolina); *United States v. 116 Emerson St.,* 942 F.2d 74, 79 n. 3 (1st Cir.1991) (Rhode Island); *United States v. 5854 N. Kenmore,* 762 F.Supp. 204, 208 (N.D.Ill.1991) (Illinois).

6. 21 U.S.C. § 881(a)(7) makes forfeitable "[a]ll real property, including any right, title, and interest ... in the whole of any lot or tract of land ... which is used, or intended to be used, in any

manner or part, to commit, or to facilitate the commission of" a drug felony.

7. The government has had ample opportunity to address the issues contained in Ms. May's motion, and the district court's grant of summary judgment for the government is properly before us. The denial of Ms. May's motion is therefore reviewable. *See McIntosh v. Scottsdale Ins. Co.,* 992 F.2d 251, 253 (10th Cir.1993); *Schmidt v. Farm Credit Servs.,* 977 F.2d 511, 513 n. 3 (10th Cir.1992).

Frances May," that her innocent ownership of the property was "undisputed," Aplt.App. vol. II, at 326, there is no such stipulation by the government in the order. Thus, Ms. May retained a claimant's normal burden of establishing innocent ownership by a preponderance of the evidence.

The record does, however, provide evidence from which a finder of fact could infer Ms. May's innocence. First, Ms. May's affidavit plausibly characterizes Mr. May's drug trafficking as an outgrowth of his presumably covert infidelity, although the affidavit stops short of altogether denying knowledge of the presence of drugs. Second, Ms. May's innocence is supported by testimony elicited from Mr. May at the criminal trial and proffered by the government itself in its motion for summary judgment:

Q: So you didn't tell [Ms. May] the truth about what you were doing?

A: No, ma'am, I certainly did not.

Q: Did you tell her you were dealing cocaine?

A: No, ma'am.

Q: Did you tell her you were having an affair with Lisa?

A: No, ma'am, I did not.

Q: All right. So at least to your wife, you haven't been truthful?

A: I would definitely agree with that, yes, ma'am. During this particular time period, yes.

Aplt.App. vol. II, at 252. Taking this evidence in the light most favorable to the nonmoving party, we conclude that there was a genuine issue, precluding summary judgment, as to how much Ms. May knew about the illegal activity in her home and business property. Thus, the district court erred in granting summary judgment for the government as to those interests.

## C. The $2,800

Ms. May next argues that the court erred in granting summary judgment for the government as to the $2,800 in cash that the police found in the May's home, either because it was marital property or because a real controversy existed as to the ownership of the money. Having disposed of the marital property issue, we address whether a real controversy existed as to ownership.

The government's case against the $2,800 consisted of testimony from the criminal trial and a detective's affidavit presenting circumstantial evidence that Mr. May kept large amounts of cash on hand for cocaine purchases and had furnished cocaine for his former employee to sell. See Aplt.App. vol. I, at 70, 77, 79, 82, 160, 167–182. Although the testimony does not directly refer to the $2,800, it allows the inference that the sum was part of Mr. May's purchase money stockpile.

In opposition, Ms. May stated in an affidavit that the $2,800 was her share of the proceeds from the sale of a jointly owned van, and that she alone used the money. Aplt.App. vol. II, at 287–88. The government responded by offering a deposition of Frances May in which she admitted that her husband knew of the money and had access to it. Aplt.App. vol. II, at 319–23. The court found that Mr. May was the sole owner of the money and that it was involved in the trafficking of cocaine as proceeds, as purchase money, or otherwise.

■■■■ Construing the evidence in the light most favorable to Ms. May, we conclude that her affidavit and deposition sufficed to create genuine issues as to the ownership of the $2,800, its connection to illegal activity, and Ms. May's knowledge of any connection that may have existed. It is true that a claimant cannot create such a controversy with an unsubstantiated assertion of an innocent ownership defense. See United States v. One Lot of United States Currency ($68,-000), 927 F.2d 30, 32 (1st Cir.1991) (holding that a claimant's answer unaccompanied by an affidavit or other evidence was insufficient to avoid summary judgment for the government); United States v. $55,518.05 in United States Currency, 728 F.2d 192, 195–96 (3d Cir.1984) (holding that an affidavit that simply recited § 881's innocent owner language, without more, was similarly insufficient). However, Ms. May's affidavit and deposition contain not just recitations of innocence, but a facially plausible account to support her claim. If her allegations are taken at face

value, she was the true owner of the $2,800, and the money was either never involved in illegal activity or was involved without her knowledge. Under either scenario, the facts admitted by Ms. May—that her husband knew of the money and had access to it—would not alone be enough to defeat her innocent owner defense. We therefore reverse the grant of summary judgment for the government as to the $2,800 in cash and remand for further proceedings.

### D. Conclusion—Ms. May's Claims to the Property

In sum, we reach the following conclusions regarding Ms. May's various claims. As to Unit 9 of the business property, Ms. May had no enforceable interest therein under Colorado law. As to the $13,050 Mr. May was carrying when he was arrested, the same is true. As to the Mays' home, Ms. May had an interest arising from her joint tenancy, and neither she nor the government was entitled to summary judgment thereon. As to Unit 10, which was also jointly titled, the same is true. As to the $2,800 found in the Mays' home, there is a genuine dispute as to ownership that precludes summary judgment for either party.

### II. Philip May's Double Jeopardy Argument

Mr. May suffered several adverse rulings from which he appeals in the claimants' opening brief: the district court's refusal to grant his motion to suppress evidence obtained in the search of his home and business, the court's conclusion that Unit 10 was forfeitable,[8] and the standard applied by the court in determining whether the forfeiture was excessive. In a supplemental brief, Mr. May also asserts for the first time in the litigation that the civil forfeiture amounted to double jeopardy. If successful, this last argument would provide Mr. May more complete relief than any of the others since it could entirely bar forfeiture of his interest in the property. We therefore begin with double jeopardy, and ultimately conclude that forfeiture of Mr. May's property in a second, civil proceeding

is barred to the extent that it is based on conduct for which Mr. May has already been prosecuted.

### A. Appealability

As a threshold matter, the government asserts that Mr. May cannot raise his double jeopardy argument for the first time on appeal. It points to our general rule that, absent manifest error, an issue will not be considered if raised for the first time on appeal. *See Hicks v. Gates Rubber Co.,* 928 F.2d 966, 970 (10th Cir.1991). The government next argues that double jeopardy rights are subject to waiver. *See United States v. Broce,* 488 U.S. 563, 575, 109 S.Ct. 757, 765, 102 L.Ed.2d 927 (1989).

The rule against considering new issues on appeal is subject to exceptions required in the interest of justice. *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). One such exception is required in the event of "plain error" in a criminal proceeding. Fed.R.Crim.P. 52(b). We have previously noted in a criminal case that a violation of double jeopardy "would surely be the type of 'plain error' which could be raised for the first time on appeal." *United States v. Gunter,* 546 F.2d 861, 865 (10th Cir.), *cert. denied,* 430 U.S. 947, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977), *and cert. denied,* 431 U.S. 920, 97 S.Ct. 2189, 53 L.Ed.2d 232 (1977); *see also United States v. Dashney,* 937 F.2d 532, 540–41 (10th Cir.1991) (considering on appeal a double jeopardy argument raised below but not in the initial brief or at oral argument), *cert. denied,* 502 U.S. 951, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991), *rev'd in part on other grounds,* 52 F.3d 298 (10th Cir.1995). Although there is no analogous federal "plain error" rule for civil cases, there are two reasons for applying a similar analysis here under the *Hicks* "manifest error" exception. First, we have noted before that this court has discretion to review previously unraised, purely legal issues in the civil context. *Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1539 (10th Cir.1992). This is true especially when the law changes during the pendency of an ap-

---

**8.** This issue is identical to the one discussed above in the context of Ms. May's motion for summary judgment and will not be addressed again.

peal. *See United States v. Rhodes*, 62 F.3d 1449, 1451–52 (D.C.Cir.1995) (rejecting government's argument that defendant waived his double jeopardy claim by failing to raise it in the district court and concluding that the issuance of two relevant Supreme Court decisions during the pendency of the appeal constituted "good reason for the omission"); *Parks Sch. of Business, Inc., v. Symington*, 51 F.3d 1480, 1488 (9th Cir.1995).[9] Second, it would beg the question to predicate review on a distinction between civil and criminal actions when the distinction itself is at the heart of the case.

▪ We also reject the government's contention that Mr. May's failure to assert his double jeopardy argument in district court amounted to a voluntary "waiver" of his rights under the Double Jeopardy Clause. It is true that double jeopardy is subject to knowing and intelligent waiver, for example in the context of a plea bargain. *Ricketts v. Adamson*, 483 U.S. 1, 11, 107 S.Ct. 2680, 2686, 97 L.Ed.2d 1 (1987); *Montoya v. New Mexico*, 55 F.3d 1496, 1499 (10th Cir.1995). A guilty plea can also waive a later double jeopardy argument, *Broce*, 488 U.S. at 569, 109 S.Ct. at 762, although the government overstates this rule's limited application. *See id.* (warning that waiver does not apply where "on the face of the record the court had no power to enter the conviction or impose the sentence"). However, even if *Broce* were as broad as the government suggests, Mr. May took no analogous affirmative step in this case, and we hold that he did not voluntarily "waive" this important constitutional right merely by failing to plead it. *See United States v. Olano*, 507 U.S. 725, 732–733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (distinguishing between forfeiture through failure to plead and actual waiver); *United States v. Rivera*, 872 F.2d 507, 509 (1st Cir.) (refusing to infer waiver of double

jeopardy rights simply from the defendant's failure to argue the issue below), *cert. denied*, 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989).[10] We conclude that it is proper to exercise discretion to hear this issue, and we turn to the merits.

### B. Civil Forfeiture as Punishment

#### 1. Traditional Double Jeopardy Principles

▪ The Fifth Amendment guarantee against double jeopardy "has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). These protections guard against two evils: successive prosecutions and impermissibly multiplicitous punishments. Regarding the successive prosecution aspect, the Supreme Court has said: "The basis of the Fifth Amendment protection against double jeopardy is that a person shall not be harassed by successive trials; that an accused shall not have to marshal the resources and energies necessary for this defense more than once for the same alleged criminal acts." *Abbate v. United States*, 359 U.S. 187, 198–99, 79 S.Ct. 666, 673, 3 L.Ed.2d 729 (1959).

▪ In this case the government first obtained a conviction against Philip May, then sought forfeiture of his property on the basis of the conduct for which Mr. May had already been convicted. In its motion for summary judgment, the "undisputed facts" on which the government based its case included the facts on which Mr. May had been convicted, plus the facts establishing a relationship between the defendant property and

---

**9.** One of the cases on which Mr. May relies, *Department of Revenue v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), was decided after the grant of summary judgment in this case.

**10.** In some of our earlier cases, a double jeopardy argument not raised below was held to have been "waived." *Morlan v. United States*, 230 F.2d 30, 32 (10th Cir.1956); *Curtis v. United*

*States*, 67 F.2d 943, 948 (10th Cir.1933); *Callahan v. United States*, 35 F.2d 633, 634 (10th Cir.1929). However, these cases predate *Olano*, and the broad rule they announce is inconsistent with both *Gunter* and our holding in *United States v. Morehead*, 959 F.2d 1489, 1506 & n. 11 (10th Cir.1992) (allowing a defendant who failed to challenge a multiplicitous indictment before trial to challenge the resulting sentences).

the illegal activity. Aplt.App. vol. I, at 4–7. Had this been a criminal forfeiture proceeding brought under 21 U.S.C. § 853, the double jeopardy problem would be apparent. The forfeiture proceeding would have been a second jeopardy, resulting in a second punishment, for the same offense.

However, the traditional view of *civil* forfeitures exempted them from double jeopardy analysis because the proceeding, being civil, could not be a jeopardy, and because forfeiture of the defendant property was not a punishment.[11] Mr. May urges that this view can no longer be maintained in the wake of the Supreme Court's decisions in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *Department of Revenue v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). We agree.

### 2. Recent Cases Construing Civil Forfeiture as Punishment

In *Halper*, the government sought civil sanctions against a former medical service manager who had already been criminally charged and convicted for filing sixty-five inflated Medicare claims that each charged $12.00 for what was really a $3.00 procedure. In the civil proceeding, the government sought more than $130,000 under a statute that provided for a $2,000 penalty plus double damages for each violation, and the manager challenged on double jeopardy grounds. The Court rejected the government's argument that double jeopardy could not apply in a civil case. *Halper*, 490 U.S. at 447, 109 S.Ct. at 1901. It observed that a civil penalty normally construed as remedial could become punitive where the penalty authorized by statute was "so extreme and so divorced from the Government's damages and expenses as to constitute punishment." *Id.* at 442, 109 S.Ct. at 1898. It concluded that in such cases the Double Jeopardy Clause applied to civil penalties "that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving

either retributive or deterrent purposes," *id.* at 448, 109 S.Ct. at 1901, and remanded the case for an accounting of the government's actual damages, *id.* at 452, 109 S.Ct. at 1903.

*Austin*, although decided on Eighth Amendment grounds, underscored the need to pierce the civil-criminal veil in determining the scope of constitutional protections in forfeiture cases. The owner of a body shop and mobile home pleaded guilty to a charge of selling cocaine, then challenged as an excessive fine the subsequent forfeiture of his house and mobile home pursuant to 21 U.S.C. § 881(a)(4) and (7). The Court conducted a historical review of the purposes behind in rem forfeitures in general and concluded that they have been "understood, at least in part, as punishment." *Austin*, 509 U.S. at ——, 113 S.Ct. at 2810. It then concluded that the specific forfeiture provisions in the case, § 881(a)(4) and (7), were not remedial, *id.* at ——, 113 S.Ct. at 2811, not "'a reasonable form of liquidated damages,'" *id.* (quoting *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972)), and not exempt from Eighth Amendment analysis even if the provisions' aim was in part nonpunitive. *Id.* The Court then remanded the case for a determination of whether the forfeiture was excessive. *Id.*

Guided primarily by *Halper* and *Austin*, the Ninth Circuit held in *United States v. $405,089.23 United States Currency*, 33 F.3d 1210, 1222 (9th Cir.1994), *reh'g denied and modified on other grounds*, 56 F.3d 41 (9th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (U.S.1996), that the Double Jeopardy Clause barred the forfeiture of property under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6) where the forfeiture was based on conduct for which the claimants had been previously convicted. In reaching its conclusion, the court held first that the civil and criminal trials, although roughly contemporaneous, were not the same proceeding for double jeopardy purposes, *id.* at 1216, and then held

---

**11.** For a discussion of the common-law, Roman, and Biblical roots of this legal fiction, see *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–86, 94 S.Ct. 2080, 2090–93, 40 L.Ed.2d 452 (1974); Oliver Wendell Holmes, *Lecture I: Early Forms of Liability, in The Common Law* (1881).

that § 881(a)(6), the "drug proceeds" provision which *Austin* did not address, was as punitive for double jeopardy purposes as the other two forfeiture provisions in § 881. *Id.* at 1220. The court concluded that the entire forfeiture was a second attempt by the government to exact punishment for the same conduct and was thus barred by the Double Jeopardy Clause. *Id.* at 1222.

The last case on which Mr. May relies is *Kurth Ranch*. After the Kurths were convicted of growing marijuana on their ranch, the State of Montana sought to collect a $1,000–per–ounce tax on the harvested marijuana, and the Kurths challenged the assessment on double jeopardy grounds. The Supreme Court first cited *Halper*'s "unequivocal statement" that "labels do not control in a double jeopardy inquiry," *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1946, and then scrutinized the state tax statute to determine whether it exacted punishment or merely revenue. *Id.* Based on the high rate of tax in proportion to the value of the taxed items, the tax's deterrent effect, its predication on the commission of a crime, and the fact that, as contraband, the taxed items were never legally owned, the Court concluded that the tax was in fact punitive. *Id.* at —— – ——, 114 S.Ct. at 1947–48. As such, it could be "imposed during the first prosecution or not at all." *Id.* at ——, 114 S.Ct. at 1948.

In the wake of *Kurth Ranch*, Judge Easterbrook agreed, in dicta, with the Ninth Circuit's conclusion that civil forfeiture following a criminal trial is a punishment for double jeopardy purposes.

> [I]f, as *Kurth Ranch* holds[,] a civil proceeding to collect a monetary penalty for crime counts as an independent "jeopardy," it does not require much imagination to see the problem. Civil and criminal proceedings are not only docketed separately but also tried separately, and under the double jeopardy clause separate trials are anathema.

*United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). In short, "The United States would do well to seek imprisonment, fines, and forfeiture in one proceeding." *Id.* at 1464.

We are constrained by *Halper, Austin,* and *Kurth Ranch* to conclude that forfeiture under § 881(a)(7) constitutes punishment as far as Mr. May is concerned. *Austin* makes it clear that forfeitures under § 881(a)(7) are punishment, and we agree with the Ninth Circuit that there is no difference between the excessive fines and the double jeopardy definition of punishment. *$405,089.23 United States Currency*, 33 F.3d at 1219. Finally, since *Halper* and *Kurth Ranch* make it clear that the Double Jeopardy Clause brooks no distinction between civil and criminal punishments (as opposed to remedial penalties), we must conclude that double jeopardy concepts apply to the forfeiture of Mr. May's interest in his house and business property.

### 3. § 881(a)(6) Forfeiture as Punishment

 We must consider separately the forfeiture of Mr. May's interest in the $13,050 he carried to his ill-fated drug deal and the $2,800 found in his home. The district court held the $13,050 to be forfeitable on the grounds that it was furnished or intended to be furnished for the purchase of controlled substances, and was intended to facilitate an illegal drug activity. The district court held the $2,800 to be forfeitable on the grounds that it was either drug proceeds or was to be furnished for the purchase of controlled substances or to facilitate drug trafficking. *See* 21 U.S.C. § 881(a)(6).

The forfeiture of these two sums involves two issues not directly addressed in the three Supreme Court cases on which we rely above. First, they were forfeited under § 881(a)(6), which was not addressed in *Austin*. Second, both sums were either held by the court or asserted by the government to be drug proceeds, and the government contends that forfeiture of such proceeds is never punishment.

As to *Austin*'s silence on § 881(a)(6), we see no reason why that provision—at least where the money forfeited thereunder is not drug proceeds—should be analyzed any differently than § 881(a)(7). The government apparently concedes this point, since it suggests no reason to treat that section differ-

ently in terms of its intent, effect, or legislative history.

Instead, the government saves its ammunition for the drug proceeds argument. Here the government relies on *United States v. Tilley*, 18 F.3d 295 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994), *and cert. denied*, —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994); *United States v. Alexander*, 32 F.3d 1231 (8th Cir.1994); and *SEC v. Bilzerian*, 29 F.3d 689 (D.C.Cir.1994). *Cf. United States v. $21,282 in United States Currency*, 47 F.3d 972, 973 (8th Cir.1995) (holding criminal forfeiture of drug proceeds under 18 U.S.C. § 981(a)(1) not to be punishment). *But see $405,089.23 United States Currency*, 33 F.3d at 1220; *United States v. Borromeo*, 1 F.3d 219, 221 (4th Cir.1993) (remanding a § 881(a)(6) drug proceeds case to determine whether the Excessive Fines Clause had been violated). We ultimately conclude that the correct approach to § 881, as dictated by *Austin*, precludes application of the government's cases.

*Alexander*, *Bilzerian*, and *Tilley* all hold in different statutory contexts that forcing a wrongdoer to disgorge ill-gotten gains is never punishment, and so cannot violate the Double Jeopardy clause. *Alexander* involved a civil RICO forfeiture and a claimant who had previously been convicted on criminal racketeering charges. Considering various elements of the forfeiture for excessive fines purposes, the Eighth Circuit held that "[f]orfeiture of proceeds cannot be considered punishment, . . . as it simply parts the owner from the fruits of the criminal activity." *Alexander*, 32 F.3d at 1236. *Bilzerian* involved a civil action by the SEC to force a defendant previously convicted of illegal stock trading to disgorge the profits from his schemes. The District of Columbia Circuit held that disgorgement was not punishment because it "'merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme.'" *Bilzerian*, 29 F.3d at 696 (quoting *Tilley*, 18 F.3d at 300).

*Tilley* is the only one of these cases to address the forfeiture of illegal proceeds under § 881. There the Fifth Circuit addressed the issue of whether the forfeiture of drug proceeds under § 881(a)(6) should be considered punishment for Eighth Amendment purposes. The court reasoned that such forfeiture was purely remedial, first because it was repayment for the social cost of the illegal activity and the government's costs in investigating and prosecuting such activity, *id.* at 298–99, and second because the possessor of drug proceeds "has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds," *id.* at 300. Thus, the seizure of drug proceeds is "more closely akin to the seizure of the proceeds from the robbery of a federal bank than the seizure of lawfully derived real property." *Id.*

The difficulty with the "repayment to society" argument is that it applies as readily to all § 881 forfeitures as it does to the forfeiture of drug proceeds. If the "remedy" effected by forfeiture is understood broadly enough to encompass not only direct governmental losses, as with Medicaid fraud in *Halper*, but also the nearly incalculable "social costs" of an entire class of illegal conduct, then all forfeitures are purely remedial. This conclusion is inconsistent with the Supreme Court's analysis in *Austin*.

*Tilley*'s second line of analysis, the analogy of drug proceeds to the loot from a bank robbery, comprises both a legal and an "equitable" aspect. Legally, just as one cannot own contraband, *see, e.g., Trupiano v. United States*, 334 U.S. 699, 710, 68 S.Ct. 1229, 1234, 92 L.Ed. 1663 (1948) (holding that illegally seized contraband need not be returned to defendants because they had no right to it), *overruled on other grounds by United States v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), it can be argued that one cannot own the proceeds from the sale of contraband. Of course, § 881(a) itself provides that "no property right shall exist" in anything forfeitable under that subsection, but the use of that provision to establish the lack of ownership in proceeds not only amounts to a *petitio principii*, but also again offends *Austin* by making *all* forfeitures nonpunitive. *Tilley* does not state, and we do not find, any clear authority for the proposition that legal ownership of drug proceeds is

impossible. In fact, drug proceeds are ownable by anyone who can establish an innocent owner defense. *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 128, 113 S.Ct. 1126, 1137, 122 L.Ed.2d 469 (1993). Thus, even a noninnocent possessor of such proceeds must own them insofar as he can alienate them. We must conclude that the proposition that drug proceeds may not be owned is false as a statement of law.[12]

*Tilley* also rests on the equitable argument that the forfeiture of drug proceeds simply denies the claimant the benefit of his or her misconduct. *See Rex Trailer Co. v. United States*, 350 U.S. 148, 153 n. 6, 76 S.Ct. 219, 222 n. 6, 100 L.Ed. 149 (1956) (stating that the civil sanction imposed in that case might serve to avoid unjust enrichment), *cited in Tilley*, 18 F.3d at 300. However, *Rex Trailer* involved a scheme to defraud the government at the expense of a group, namely veterans, that the government had intended to benefit. Unjust enrichment typically involves the illicit enjoyment of a benefit taken from its rightful owner. *Restatement of Restitution* § 1 (1936). The force of the equitable analogy is diminished where, as here, there simply is no rightful owner to whom the money may be returned.

Finally, *Tilley* is inconsistent with the analysis the Supreme Court has already applied to § 881. In *Austin*, the Court held § 881(a)(4) and (7) to be punishment based on "the historical understanding of forfeiture as punishment," 509 U.S. at ——, 113 S.Ct. at 2812, the focus of the provisions on the culpability of the owner, *id.* at ——, 113 S.Ct. at 2811, and the fact that Congress tied

forfeiture directly to the commission of specified offenses, *id.* These factors apply as readily to § 881(a)(6) as they do to § 881's other provisions. *See $405,089.23 United States Currency*, 33 F.3d at 1221.

In addition, we note a further difficulty with *Tilley*'s drug proceeds exception. Drug proceeds are also forfeitable under the criminal forfeiture statute. 21 U.S.C. § 853(a)(1). If the forfeiture of drug proceeds under § 881(a)(6) were held not to be punishment, and if the civil and criminal labels are indeed not dispositive of the double jeopardy issue, there would be no principled way to avoid applying *Tilley*'s reasoning to § 853(a)(1). Criminal forfeiture could then be imposed in a proceeding separate from the criminal trial without constituting double jeopardy, as long as drug proceeds only were forfeited.[13]

For the above reasons, we reject the government's invitation to analyze the drug proceeds portion of § 881 separately from the rest of the statute. Forfeiture of Mr. May's interest in the $13,050 and $2,800 was punishment for double jeopardy purposes whether those sums were forfeited as drug proceeds or otherwise.[14]

Having determined that the forfeiture in this case was punishment, we must next consider whether the Double Jeopardy Clause bars the forfeiture to the extent that it was based on conduct already punished criminally. Mr. May says it does, and contends that he is entitled to an immediate judgment to secure the full extent of his interest in the forfeiture res. The government responds in two ways. First, it argues that the forfeiture proceeding is not a second jeopardy. Next,

12. We note that the Sixth Circuit, although holding that civil forfeiture following a criminal conviction may constitute double jeopardy, *United States v. Ursery*, 59 F.3d 568 (6th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (U.S.1996), has also recently held without discussion that one can never acquire a property right in drug proceeds, *United States v. Salinas*, 65 F.3d 551, 554 (6th Cir.1995). As the concurring opinion in the latter case warns, the Sixth Circuit's approach can make the protection of the Double Jeopardy Clause "contingent on artful pleading." *Id.* (Wellford, J., concurring).

13. In a recent decision, the Third Circuit has followed *Tilley*, concluding that forfeiture of drug proceeds under 21 U.S.C. § 881(a)(6) is not pun-

ishment. *See United States v. $184,505.01 in United States Currency*, 72 F.3d 1160, 1168–70 (3d Cir.1995). For the reasons set forth above, we find the Ninth Circuit's reasoning in *$405,089.23 United States Currency* more persuasive.

14. Our disapproval of *Tilley*'s characterization of proceeds forfeiture as nonpunitive should not be read as a disapproval of other holdings in the case. We conclude below in Part II.*D*.1. that this case should be remanded to determine whether the seized cash is forfeitable as proceeds from other drug sales for which Mr. May was not previously indicted. We express no opinion as to *Tilley*'s conclusion that proceeds forfeiture can never be excessive under the Eighth Amendment.

the government argues that the forfeiture is not a jeopardy for the same offense. We reject the former argument completely, and accept the latter only insofar as the record indicates that forfeiture can be based on conduct for which Mr. May was not previously prosecuted.

## C. The Forfeiture Proceeding as a Second Jeopardy

The government first contends that the forfeiture proceeding was not a second jeopardy. It bases its position on *United States v. Millan*, 2 F.3d 17 (2d Cir.1993), *cert. denied*, ____ U.S. ____, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994). In that case the Second Circuit held that double jeopardy did not bar a criminal proceeding following a § 881 forfeiture where both were part of a "single, coordinated prosecution." *Id.* at 20. The court noted that although the civil and criminal actions were filed separately, they bore various indicia of simultaneity and coordination, and concluded that the two proceedings constituted a single "prosecution" that did not implicate constitutional concerns about prosecutorial abuse.[15] *Id.* The same analysis has been adopted in the Eleventh Circuit, *see United States v. 18755 N. Bay Rd.*, 13 F.3d 1493, 1499 (11th Cir.1994), but was rejected in the Ninth Circuit, *$405,089.23 United States Currency*, 33 F.3d at 1216. We reject *Millan* as well.

We note initially that the authority for *Millan*'s distinction between "proceeding" and "prosecution" consists entirely of one sentence from *Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984): "[T]he [Double Jeopardy] Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution." *Id.* at 500, 104 S.Ct. at 2541, *quoted in Millan*, 2 F.3d at 20. But *Johnson* did not involve multiple proceedings; the question was instead whether a *single* proceeding could be subdivided "like amoebae" into more

than one jeopardy for Fifth Amendment purposes. *Id.* at 501, 104 S.Ct. at 2542. The *Johnson* Court had no reason to consider, and gave no evidence that it did consider, the definition of "prosecution" in the context of multiple proceedings. Thus, *Johnson* is a very thin reed on which to perch the proposition that a single "prosecution" may comprise multiple proceedings without violating double jeopardy.

Moreover, *Millan* and progeny are also implicitly inconsistent with the approach taken in *Halper* and *Kurth Ranch*. In both cases the civil proceedings that followed the criminal convictions were arguably part of a "single, coordinated prosecution," yet neither case took the view that two proceedings could constitute one prosecution. Moreover, the Court's choice of terminology in those cases is inconsistent with such a view. In *Halper*, the Court used the term "prosecution" synonymously with "proceeding." *See, e.g., Halper*, 490 U.S. at 448–49, 109 S.Ct. at 1901–02 ("[U]nder the Double Jeopardy Clause a defendant who already has been punished in a criminal *prosecution* may not be subjected to an additional civil sanction....") (emphasis added). Similarly, in *Kurth Ranch* the Court stated that the raid on the Kurth Ranch "gave rise to four separate legal proceedings," including the criminal trial and the tax proceeding, *Kurth Ranch*, ____ U.S. at ____, 114 S.Ct. at 1942, and then concluded that the tax proceeding was "the functional equivalent of a successive criminal *prosecution*," *id.* at ____, 114 S.Ct. at 1948 (emphasis added).

The practical result, as Judge Easterbrook noted, is that two trials mean two jeopardies. "In *Kurth Ranch* itself the tax proceeding was begun at the same time as the criminal prosecution; the Supreme Court did not think the fact that the two were pending contemporaneously mattered." *Torres*, 28 F.3d at 1465.

---

15. The following factors were considered significant: (1) the warrants authorizing arrest and the warrants authorizing seizure were issued on the same day by the same judge; (2) the warrants were based on the same affidavit; (3) the civil complaint incorporated the criminal indictment; and (4) the defendants were aware that the government was pursuing both remedies. *Millan*, 2 F.3d at 20. The defendants' awareness was considered especially significant in discounting the core double jeopardy concern that the "government might act abusively by seeking a second punishment when it is dissatisfied with the [first] punishment." *Id.* at 20–21.

■ Finally, *Millan* also underestimates the policy concerns that underlie the Double Jeopardy Clause. The Double Jeopardy Clause protects defendants against more than a prosecutor's dissatisfaction with the results of the first trial. The clause is implicated whenever a defendant is obliged to "marshal the resources and energies necessary for his defense more than once for the same alleged criminal acts." *Abbate,* 359 U.S. at 198–99, 79 S.Ct. at 673. The practice of instituting multiple proceedings against a single defendant, which the government benignly terms a "coordinated law-enforcement effort," has as much or more capacity to harass and exhaust the defendant than does a post hoc decision to retry him. *See $405,-089.23 United States Currency,* 33 F.3d at 1217 ("We believe that such a coordinated, manipulative prosecution strategy heightens, rather than diminishes, the concern that the government is forcing an individual to 'run the gantlet' more than once." (quoting *Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957))); *see also United States v. P.H.E., Inc.,* 965 F.2d 848, 850–51 (10th Cir.1992) (illustrating how coordinated prosecutions may become a form of prosecutorial abuse).

■ In the present case there is certainly no indication that the government's prosecution was impelled by improper motives. The government points out that it was procedurally constrained to institute two actions in order to do everything to Mr. May that the statutes appear to allow, and it is certainly true that attempts to punish both civilly and criminally must, in our legal system, give rise to separate proceedings. Nonetheless, the government's good faith does not make two proceedings a single jeopardy.

As the Ninth Circuit has observed, *Millan* "contradicts controlling Supreme Court precedent as well as common sense." *$405,-089.23 United States Currency,* 33 F.3d at 1216. We conclude that the government's single-prosecution argument is justified by neither policy nor precedent, and that "[t]wo trials, even if close in time, are still double jeopardy." *Torres,* 28 F.3d at 1465.

### D. The Forfeiture Proceeding as a Jeopardy for the Same Offense

The government's next contention is that, even if the instant forfeiture is punishment, the civil proceeding that imposed it was not a jeopardy for the *same offense.* First, the government contends that at least some of the property is forfeitable on the basis of acts for which Mr. May was never tried. Next, the government contends that the elements of civil forfeiture differ from those of the criminal offense and are thus different offenses for double jeopardy purposes. Under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), recently reaffirmed in *United States v. Dixon,* 509 U.S. at 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), a court faced with a claim of double jeopardy must ask "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id.* at ——, 113 S.Ct. at 2856. Finally, the government argues that whatever conclusion is reached under *Blockburger,* the same conduct may form the basis of two proceedings if Congress so intends.

#### 1. Conduct Not Previously Prosecuted

■ As to the argument from unindicted conduct, it is axiomatic that a party cannot rely on the Double Jeopardy Clause to avoid punishment for conduct for which he was never previously placed in jeopardy. In this case, the court found that one possible basis for forfeiture of the $2,800 was the possibility that it was proceeds from drug sales. The government also made the same argument, with supporting evidence, as to the $13,050, although the court did not explicitly predicate forfeiture thereon. We agree that basing forfeiture on previous conduct for which Mr. May was never indicted cannot constitute double jeopardy. *See United States v. One 1978 Piper Cherokee Aircraft,* 37 F.3d 489, 495 (9th Cir.1994).

In light of our earlier discussion of the ownership of the $2,800, we hold that Mr. May's interest in that sum may be forfeited on remand if he is found to have had any ownership interest therein and if the money

is found to be proceeds from previous, unprosecuted sales. As to the $13,050, the record is insufficient to affirm summary judgment for the government on this alternative theory, but we hold that that sum may also be forfeited on remand to the extent that it is found to be proceeds from previous, unprosecuted sales. However, the record is devoid of any indication by the government that either the house or the business property are forfeitable based on unprosecuted conduct. Thus, we must turn to the government's more ambitious contentions.

### 2. Previously Prosecuted Conduct

The government next argues that civil forfeiture, even when based on precisely the same conduct previously used to establish criminal charges, cannot violate the Double Jeopardy Clause; either the criminal penalty and the forfeiture are not punishment for the "same offense," because under *Blockburger* the forfeiture "offense" and the crime each require proof of a fact that the other does not, or they do punish the same offense, but with congressional approval. Neither argument is persuasive.

### a. Does § 881 Define an Offense?

We note first that the government's *Blockburger* argument presupposes that § 881 defines an offense as well as a punishment—presumably, the "offense" of being the owner of guilty property. This proposition is by no means self-evident; in general, a statute may very well create a punishment without defining a separate offense. In *Kurth Ranch*, for instance, the Court did not find itself obliged to consider whether Montana's drug tax statute defined a separate offense; it was enough for double jeopardy purposes that the statute imposed a second punishment for offenses defined elsewhere. Similarly, 21 U.S.C. § 853, the criminal forfeiture statute for drug offenses, merely prescribes a punishment, not a separate offense. *Libretti v. United States*, —— U.S. ——, ——, 116 S.Ct. 356, 364, 133 L.Ed.2d 271 (1995).

Moreover, the idea that § 881 itself defines a separate offense is at odds with *Austin*'s review of that section's legislative history. Although at common law the forfeiture of guilty property was sometimes described as a "penalty for carelessness," *Austin*, 509 U.S. at ——, 113 S.Ct. at 2806 (quoting *Calero–Toledo*, 416 U.S. at 683, 94 S.Ct. at 2091), the Court noted in *Austin* that the innocent owner defense contained in § 881 revealed a "congressional intent to punish only those involved in drug trafficking," *id.* at ——, 113 S.Ct. at 2811. The section's legislative history also reveals an intent to punish, not negligent ownership, but "'the enormously profitable trade in dangerous drugs.'" *Id.* (quoting S.Rep. No. 225, 98th Cong., 1st Sess. at 191 (1983)). Finally, none of the opinions in *Austin* analyzes the excessive fines issue in that case in terms of a second offense. *See id.* at ——, 113 S.Ct. at 2815 (Scalia, J., concurring) (suggesting that proportionality of the forfeiture be measured in terms of the property's relationship to the crime previously committed); *id.* at —— n. 15, 113 S.Ct. at 2812 n. 15 (noting Justice Scalia's suggestion "that the sole measure of an *in rem* forfeiture's excessiveness is the relationship between the forfeited property and the *offense*," and declining to "rule out the possibility that the connection between the property and the *offense* may be relevant") (emphasis added).

The foregoing considerations indicate that, with respect to claimants previously prosecuted for the illegal activity occasioning the forfeiture, § 881 defines a punishment, but not a separate offense. However, even if a second offense had been created, we conclude below that prosecution therefor in a second, postconviction proceeding is barred under *Blockburger*.

### b. *Blockburger*

Under *Blockburger*, two offenses are different only if each contains an element not present in the other. *Dixon*, 509 U.S. at ——, 113 S.Ct. at 2856. When only one offense contains an "extra" element not found in the other, the latter is a lesser included offense of the former, and a defendant may not be charged with both in separate proceedings. *See Illinois v. Vitale*, 447 U.S. 410, 421, 100 S.Ct. 2260, 2267, 65

L.Ed.2d 228 (1980) (holding that, where a defendant convicted of failing to reduce speed was subsequently tried for involuntary manslaughter, remand would be necessary to determine whether under state law the former was an element of the latter); *Brown v. Ohio*, 432 U.S. 161, 168–69, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977) (holding that a defendant could not be tried for auto theft once convicted of the lesser included offense of joyriding); *Harris v. Oklahoma*, 433 U.S. 682, 682, 97 S.Ct. 2912, 2912, 53 L.Ed.2d 1054 (1977) (per curiam) (holding that a defendant could not be tried for felony murder once convicted of the lesser included offense of robbery).

The situation appears to be similar here. Property is forfeit under § 881(a) whenever it has the requisite relationship to a violation of title 21, chapter 13, subchapter I. Thus, if any provision of § 881(a) defines an offense, it is one with two elements: the underlying drug violation and the use of property in connection therewith. All drug violations in subchapter I, and a fortiori their underlying elements, would therefore be contained within § 881(a) as lesser included offenses of the forfeiture "offense." Under *Harris* and its progeny such an offense may not be prosecuted once a jeopardy for the lesser included offense has occurred.

Against this reading of § 881(a), the government argues that the forfeiture provision passes the *Blockburger* test because, unlike the drug crime, it has no mens rea element, does not require proof of an individual claimant's unlawful conduct, and may give rise to a forfeiture when there are no claimants at all. Of course, these arguments tend to undermine the government's basic position by suggesting that § 881 does not define an offense at all. In addition, they overlook the fact that the government must show mens rea and unlawful conduct on someone's part, or the forfeiture will fail for lack of an underlying drug crime. But more fundamentally, these arguments apply *Blockburger* at too abstract a level. The government's argument is that forfeiture in general need not be based on any particular past offense by a particular claimant, so forfeiture does not punish the "same offense" when in a particular case it is based squarely on such a past offense. However, in applying *Blockburger*, courts are not so free to ignore the facts on which prosecutions are based. For example, felony murder need not be based on any particular felony, yet in *Harris* the Court considered a felony murder conviction to bar prosecution for the underlying felony of robbery. 433 U.S. at 682, 97 S.Ct. at 2912. Similarly, in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), the Court held that a District of Columbia statute codifying *Blockburger* made rape "a lesser offense included within the offense" of felony murder. *Id.* at 694 n. 8, 100 S.Ct. at 1439 n. 8. Thus, where commission of one of a certain class of offenses is a necessary element of another offense, and where the identical conduct or unit of prosecution is the factual basis of both, each offense within the class is a "species of lesser-included offense" in relation to the greater offense. *Vitale*, 447 U.S. at 420, 100 S.Ct. at 2267. For purposes of the government's *Blockburger* argument, we conclude that the crimes for which Mr. May was previously convicted constitute a "species of lesser-included offense" in relation to the civil forfeiture, which is therefore barred under the cases discussed above.

### c. Congressional Intent

Finally, the government contends, apparently in the alternative, that legislative intent, not *Blockburger*, is what controls the government's ability to impose multiple punishments in successive proceedings. *Blockburger* has been held to be a mere "rule of statutory construction," to be utilized only when "the will of Congress is not clear." *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). Relying on such language, the government appears to argue that two offenses that are the "same offense" under *Blockburger* can still be separately tried and punished if Congress so chooses.

However, we must conclude that congressional intent, no matter how clear, cannot bestow constitutional legitimacy upon multiple punishments for the same offense when they are imposed in multiple proceedings.

The government's position is correct with respect to multiple punishments in the same proceeding. *See Hunter,* 459 U.S. at 366, 103 S.Ct. at 678; *Whalen,* 445 U.S. at 689, 100 S.Ct. at 1436; *Yparrea v. Dorsey,* 64 F.3d 577, 579 (10th Cir.1995). But neither *Hunter* nor *Whalen* was decided in the context of multiple proceedings. On the other hand, cases that do involve multiple proceedings have applied *Blockburger* or an analogous elements test and have almost uniformly failed to consider legislative intent. *See Dixon,* 509 U.S. at ———–——, 113 S.Ct. at 2860–63 (reviewing cases and concluding that the elements test is the sole test for double jeopardy in the multiple proceeding context); *Vitale,* 447 U.S. at 419–20, 100 S.Ct. at 2266–67 (holding that double jeopardy would bar prosecution for manslaughter after conviction for failure to reduce speed if, as a matter of state law, the latter is a necessary element of the former); *Harris,* 433 U.S. at 682, 97 S.Ct. at 2912 (holding that a defendant previously convicted of felony murder during a robbery could not then be tried for the robbery); *Brown,* 432 U.S. at 168–69, 97 S.Ct. at 2226–27 (holding that *Blockburger* prevents prosecution for auto theft after conviction for the lesser included offense of joyriding); *Gavieres v. United States,* 220 U.S. 338, 344, 31 S.Ct. 421, 423, 55 L.Ed. 489 (1911) (upholding successive criminal prosecutions because "[e]ach offense required proof of a fact, which the other did not"); *Ex parte Nielsen,* 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889) (holding that a defendant convicted of one offense may not then be prosecuted for a lesser included offense). In *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), where the Court did consult legislative history in a multiple prosecution setting, *id.* at 782–85, 105 S.Ct. at 2413–15, the Court then proceeded to perform an independent double jeopardy analysis based on identity of conduct, *id.* at 786, 105 S.Ct. at 2415, before reaching its conclusion that double jeopardy was not violated by the use of a prior drug conviction as a predicate offense of the crime of conducting a continuing criminal enterprise. Thus, we do not read *Garrett* as an exception to the approach set forth in *Nielsen, Gavieres, Brown, Harris,* and *Vitale.*

These cases culminate in *Halper* and *Kurth Ranch,* where the Court limited the effect of federal and state statutes by barring the imposition of civil penalties for an offense previously prosecuted. The point is especially clear in *Kurth Ranch,* where the Montana legislature chose to impose a civil penalty *only* on those potentially subject to a first prosecution. —— U.S. at ——, 114 S.Ct. at 1947. Once the Court determined that the tax was a punishment, it inquired no further into the intent of the legislature, but held that the tax "must be imposed during the first prosecution or not at all." *Id.* at ——, 114 S.Ct. at 1948.

■■■ With respect to nonremedial civil penalties, we take *Halper* and *Kurth Ranch* to be dispositive. Although Congress may allow multiple punishments for the same offense in the same proceeding, it cannot legitimize multiple punishments for the identical offense in different proceedings.

### E. Conclusion—Double Jeopardy

Thus, whether the forfeiture is seen merely as another punishment for Mr. May's prior drug conviction or as a punishment for a separate offense, the result is the same. Following his conviction on drug charges, Mr. May was punished again in a separate proceeding for the same offenses. Insofar as it was based on previously prosecuted conduct, the second punishment violated the Double Jeopardy Clause of the Fifth Amendment. Since the government did not argue and the record does not indicate that either Unit 10 or the Mays' home is forfeitable on the basis of unprosecuted conduct, we hold that Mr. May's interest in these properties may not be forfeited.

### III. Issues on Remand

Because a remand is still necessary despite the success of Mr. May's double jeopardy argument, we must address several remaining issues pertaining to further proceedings: the government's argument that Mr. May can still forfeit a part interest in all of his property, Mr. May's argument that evidence from the searches should have been suppressed, and Mr. May's argument that the

district court erred in determining whether the forfeiture was excessive. We reject the first two, and decline to address the last.

The government contends that if Mr. May's civil forfeiture does constitute double jeopardy, he could still forfeit a portion of all the property in which he claimed an interest. That is, since forfeiture has been held to be punishment only "in part," *Austin,* 509 U.S. at ——, 113 S.Ct. at 2810, the government asks that the case be remanded to determine how much property Mr. May can forfeit without being subjected to a second punishment.

The government's request is based largely on a misapplication of *Halper.* In that case, the defendant had fraudulently obtained a definite sum of money from the government, and the statute under which he was prosecuted aimed to provide a sort of "rough remedial justice" in the form of "liquidated damages." 490 U.S. at 446, 109 S.Ct. at 1900. Obviously, where the government has been cheated out of a definite sum, it is in the same position as any civil plaintiff, and a court may determine with some exactitude where compensation stops and punishment starts. But the analogy to other civil cases breaks down in the § 881 forfeiture context. Thus, in *Austin* the Supreme Court distinguished *Halper* and noted:

> In this case, however, it makes sense to focus on §§ 881(a)(4) and (a)(7) as a whole.... The value of the conveyances and real property forfeitable under §§ 881(a)(4) and (a)(7) ... can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental.

*Austin,* 509 U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14. In other words, the first dollar forfeited under those provisions is no more or less punitive than the last. Nor do we see any reason for a different result under § 881(a)(6). We therefore reject the government's request; it is simply impossible to calculate a purely remedial civil forfeiture under § 881(a)(6) and (7).

Finally, we must consider Mr. May's other contentions on appeal. First, he argues that the district court erred in denying his motion to suppress evidence gathered in the searches of his home and business properties. Second, he argues that the district court applied the wrong standard in determining whether the forfeiture was an excessive fine under the Eighth Amendment.

■ Mr. May objected to admission of evidence taken from his home and business properties, arguing that the police vitiated his consent by leading him away from the search sites before the searches were complete. The district court denied Mr. May's motion to suppress on the ground that such motions cannot be raised in civil cases. The government recognizes that this is an inaccurate statement of the law. Evidence illegally obtained may be suppressed in civil forfeiture proceedings. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 697–98, 85 S.Ct. 1246, 1249, 14 L.Ed.2d 170 (1965); *Boyd v. United States,* 116 U.S. 616, 633–34, 6 S.Ct. 524, 533–34, 29 L.Ed. 746 (1886). The government nonetheless contends that the ruling was harmless error.

■ In light of the record, we agree that the district court's ruling was harmless error. Mr. May was not deprived of the ability to meaningfully exercise his contractual right since he was free to stop the search once he realized the police intended to take him from the search site. Until consent is revoked, any evidence seized is admissible. *United States v. Guzman,* 852 F.2d 1117, 1122 (9th Cir.1988).

Mr. May's second contention is that the district court applied the wrong standard in determining whether the forfeiture constituted an excessive fine under *Austin v. United States.* In view of the fact that the proceedings on remand may produce no forfeiture at all, this issue is not ripe for adjudication. *See Garrick v. Weaver,* 888 F.2d 687, 693–94 (10th Cir.1989).

## CONCLUSION

The forfeiture res in this case consists of five items of property in which the two appellants have claimed discrete interests. In light of the above, we hold as follows. Regarding the $13,050, we AFFIRM summary judgment for the government as to Ms.

May's claimed interest, but REVERSE as to Mr. May's interest and REMAND for proceedings consistent with this opinion. As to the $2,800, we also REVERSE and REMAND for proceedings consistent with this opinion. As to Unit 9 of the business property, we AFFIRM summary judgment for the government as to Ms. May's claim, but REVERSE the summary judgment with respect to Mr. May and REMAND with instructions to enter judgment for Mr. May. As to Unit 10 of the business property, we REVERSE the summary judgment as to Ms. May and REMAND for proceedings consistent with this opinion; as to Mr. May, we REVERSE and REMAND with instructions to enter judgment for Mr. May. As to the Mays' home, we REVERSE as to Ms. May and REMAND for proceedings consistent with this opinion; as to Mr. May, we REVERSE and REMAND with instructions to enter judgment for Mr. May.