**Ronald J. SMITH, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 95–2259.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1995.

Decided Feb. 21, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied April 3, 1996.

---

Joseph Saint–Veltri (argued), Denver, CO, for Petitioner–Appellant.

Michael Thompson (argued), Office of United States Attorney, Criminal Division, Fairview Heights, IL, for Respondent–Appellee.

Before BAUER, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

With the money he made selling drugs, Ronald J. Smith bought a Jeep Cherokee and real property in Steamboat Springs, Colorado. He also had cash on hand of $165,550. Smith's life took a turn for the worse, though, when the Jeep, the property, and the money were forfeited to the government and, after his conviction for conspiracy to distribute more than 1,000 pounds of marijuana, he was sentenced to 28 years in prison. Smith's 1991 conviction and sentence (on January 10 and June 4, respectively) were affirmed by this court in *United States v. Smith,* 995 F.2d 662 (7th Cir.1993).

In 1995, Smith brought this proceeding under 28 U.S.C. § 2255, claiming that prior judgments of forfeiture growing out of his marijuana trafficking constituted a jeopardy and that his subsequent conviction was therefore a violation of the Double Jeopardy Clause of the United States Constitution. The district court rejected the claim and Smith appeals.

Smith's Jeep was seized at the time of his arrest. The vehicle was administratively forfeited to the government. Somewhat later, the currency was seized and administratively forfeited. Smith did not file claims in the administrative proceedings.

Judicial forfeiture proceedings were filed as to the real property in Colorado. Originally the complaint was filed in the Southern District of Illinois, but it was dismissed there because venue was improper. The complaint was then filed in the District of Colorado in June 1991, where it was compromised by the government and Smith's wife. An amended final order of forfeiture was entered on February 26, 1992. Claiming an interest in the property, Smith filed a motion to dismiss the proceeding in Illinois. He did not, however, file a claim on the property in the Colorado action.

It is undisputed that all three forfeitures were based on 21 U.S.C. § 881(a)(6) as proceeds traceable to drug dealing. Smith now argues, on the basis of *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), that the forfeitures were punishments and therefore he was twice put in jeopardy. He hopes to ride this contention out of prison.

There are several things wrong with Smith's argument, not the least of which is that he raised it for the first time in a collateral proceeding. For that reason, the government argues alternative theories by which Smith is barred from relief in this § 2255 proceeding. The first is that the doctrine of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), bars his petition. That is, if his claim is based on a new constitutional rule established after his

conviction became final, the conviction is immune from constitutional attack.

*Teague* does not help the government in this case. The constitutional rule from which Smith derives his claim has been evolving at least since *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). *Halper* was decided before Smith was indicted. On the other hand, as we will soon discuss, the parameters on the doctrine are still far from settled. Suffice to say that we do not find that *Teague* bars Smith's claim.

That said, the government's alternative argument comes into play: that is, that Smith failed to raise the argument on direct appeal and can only pursue it in this § 2255 proceeding if he can show cause for the failure to raise the issue sooner and actual prejudice resulting from the errors of which he complains. *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

The primary problem Smith faces is that he cannot show prejudice from the failure to raise the argument. There are a number of reasons why the argument would fail and the results for Smith would be unchanged. Therefore, there is no prejudice to which he can now cling.

One reason is that although he attempts to provide excuses for his failure to do so, the fact remains that he did not file a claim in the administrative proceedings, which pushes him head first into our decision in *United States v. Torres,* 28 F.3d 1463 (7th Cir.1994). Secondly, there is a problem with the timing of one of the forfeitures: the Colorado real estate was forfeited after Smith's conviction, not before.

The issue which keeps Smith from showing prejudice as to all three, however, grows out of the fact that what was forfeited was the fruit of drug dealing, property which Smith had no right to acquire in the first place. The issue is whether the forfeiture of items found to be proceeds traceable to drug dealing can be considered punitive and thus constitute jeopardy.

The Double Jeopardy Clause prohibits more than one "punishment" for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969),

overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). A criminal proceeding clearly subjects a defendant to punishment. What we now know after *Halper, Austin,* and *Kurth Ranch* is that a civil proceeding may, under certain limited circumstances, also constitute punishment under either the Double Jeopardy Clause or the Excessive Fines Clause of the Constitution.

*Halper* involved a defendant whose crimes, taken together, netted him $585. In a subsequent civil proceeding, the government sought a penalty of $130,000. In determining whether the civil penalty was barred by the Double Jeopardy Clause, the Court found that the fact that the second proceeding was civil, not criminal, was not controlling. Because the civil "penalty" was so far out of line with the government's loss, it served a punitive rather than a remedial purpose, and was therefore barred by the Double Jeopardy Clause. The issue was said to involve a type of "rough remedial justice." The concern was directed to situations where "rough justice becomes clear injustice." *Halper,* 490 U.S. 435, 446, 109 S.Ct. 1892, 1901.

Then in *Austin,* the issue was whether the Excessive Fines Clause of the Eighth Amendment applies to forfeitures under 21 U.S.C. § 881(a)(4) and (a)(7). Under § 881(a)(4), things like airplanes and automobiles are forfeitable if used to facilitate the transportation of controlled substances, their raw materials, or equipment used to manufacture or distribute them. Under § 881(a)(7), real property is forfeitable if used to facilitate the commission of a drug felony. Forfeitures of this type were found to be subject to the Excessive Fines Clause.

Finally, *Kurth Ranch* involved a state tax imposed on the possession of illegal drugs after the taxpayer previously was convicted in a criminal proceeding for the same conduct. The Court held that the Montana tax was the functional equivalent of a successive criminal prosecution that placed the defendants in jeopardy a second time for the same offense.

It did not take defendants long to parlay these cases into the argument which, in most

cases, is more significant to them: if a prior criminal conviction can bar a subsequent civil forfeiture or tax, then a prior civil forfeiture may invalidate a subsequent criminal conviction. We considered such a claim in *Torres*. But in that case Mr. Torres had not been in jeopardy in the forfeiture proceeding because he had not filed a claim for the property. If the property was not his, what was the jeopardy to him? His right to be free of double jeopardy was not violated. *See also United States v. Ruth*, 65 F.3d 599 (7th Cir.1995); *United States v. Penny*, 60 F.3d 1257 (7th Cir.1995); *United States v. Vega*, 72 F.3d 507 (7th Cir.1995).

Not surprisingly, although in *Austin* the Court considered the forfeiture of property used to *facilitate* the drug trade under § 881(a)(4) and (a)(7), defendants such as Smith have claimed that the reasoning applies as well to items forfeited under § 881(a)(6) as *proceeds* of drug transactions. The claim is that "proceeds" forfeitures constitute punishment if they are out of proportion to the government's or society's loss. Can this be so? No.

The reason the answer is "no" is that proceeds forfeitures can never be out of proportion to the "loss" suffered by the government or society. If there has been a finding that certain property, for instance, is forfeitable pursuant to § 881(a)(6) as *proceeds* of drug trafficking, it is directly equal that part of the profits with which it was purchased. It directly represents at least a portion of the profits and can thus be less than or equal to society's loss, but not more than the loss. For this reason, there is no argument based on proportionality or excessiveness available to Smith.

That being the case, the forfeiture of proceeds acquired from drug dealing can hardly be termed punishment. Forfeitures of drug proceeds have been analogized to the seizure of proceeds from the robbery of a bank. The money is not rightfully the robbers', and its seizure "merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal

scheme." *United States v. Tilley*, 18 F.3d 295, 300 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994). Or put another way by another court:

Not only are drug proceeds inherently proportional to the damages caused by the illegal activity ... but also one never acquires a property right to proceeds, which include not only cash but also property secured with the proceeds of illegal activity.... [F]orfeiture of drug proceeds is not punishment, but is remedial in nature.

*United States v. Salinas*, 65 F.3d 551, 554 (6th Cir.1995).

The vote is not unanimous, however. The Court of Appeals for the Ninth Circuit has decided that forfeitures under § 881(a)(6), at least in part, constitute punishment. *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (1994), *amended on denial of reh'g*, 56 F.3d 41 (1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996).[1] In that case the claimants had been convicted of drug offenses. Then the forfeiture actions were filed. The court said that *Austin* required that any determination must be made by looking at the statute as a whole. In addition to providing for the forfeiture of proceeds, § 881(a)(6) allows forfeiture of money "intended to be used to facilitate" a violation of the narcotics laws. Therefore, it is no answer to say that the particular property forfeited was proceeds of drug trafficking. It is the statute under which the forfeiture was made which must be examined, using three principles: a strong presumption that a forfeiture statute does not serve solely a remedial purpose, a recognition that punishment may be the purpose where a statute focuses on the culpability of the property owner by exempting innocent owners, and a reasonable presumption that where the forfeiture is tied to the commission of a specific offense, punishment is at least partially the goal. The court concluded that all forfeitures under § 881(a)(6) must be analyzed to see whether they are remedial or punitive.

We disagree and see nothing in *Austin* which precludes the conclusion that a defen-

1. The case has recently been criticized on other grounds by the Court of Appeals for the Eighth Circuit as elevating "form over substance." *United States v. Smith*, 75 F.3d 382 (8th Cir. 1996).

dant has no claim to the proceeds of drug trafficking and that those proceeds are by definition directly proportional to the loss to the government and society. *Austin* recognizes that the forfeiture of contraband itself is remedial. There is no reason, however, the Court says, to conclude the same as to conveyances used to facilitate a crime. True, but there is also no reason to conclude that the forfeiture of property or money exchanged for contraband—that is, the proceeds of drug trafficking—is anything but remedial.

This is not a principle limited to drug cases. In a case under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1963, the court said:

> Forfeiture of proceeds cannot be considered punishment, and thus, subject to the excessive fines clause, as it simply parts the owner from the fruits of the criminal activity.

*United States v. Alexander,* 32 F.3d 1231, 1236 (8th Cir.1994). *See also United States v. $21,282.00 in U.S. Currency,* 47 F.3d 972 (8th Cir.1995) (forfeitures under the civil forfeiture statutes found at 18 U.S.C. § 981).

*S.E.C. v. Bilzerian,* 29 F.3d 689, 696 (D.C.Cir.1994), was an appeal from a disgorgement order requiring Bilzerian to turn over $33,140,787, which was the profit he obtained from securities law violations of which he had previously been convicted. Because his previous conviction was based on the same conduct which gave rise to the disgorgement order, Bilzerian, relying on *Halper,* contended that the order constituted double jeopardy. The court rejected his contention and found that the order was remedial, not punitive. The order required him to give up only his ill-gotten gains; it did not add additional punishment. The court specifically found that *Halper* was of limited applicability: "The reach of the *Halper* decision is short." *Bilzerian* at 696.

We remain convinced that those forfeitures under § 881(a)(6) which are clearly forfeitures of drug proceeds, such as the ones here, are remedial. Conceptually, they can be nothing else. Therefore, our Mr. Smith can show no prejudice. His petition pursu-

ant to § 2255 was correctly dismissed, so the judgment of the district court is

Affirmed.

DIANE P. WOOD, Circuit Judge, concurring in the judgment.

I concur in the decision to affirm Smith's conviction and sentence, but I do so on a much narrower ground. As the Court notes, Smith never filed a claim in the administrative proceedings, and the Colorado real estate was forfeited after his criminal conviction, not before. Because he was not a party to the administrative proceedings, he was not at risk there, and "without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *United States v. Torres,* 28 F.3d 1463, 1465 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994) (citations omitted). *See also United States v. Ruth,* 65 F.3d 599, 605 (7th Cir.1995). Timing alone defeats his claim with respect to the real estate.

Perhaps in recognition of the frequency with which this issue arises, the government offered a kitchen-sink's array of arguments in support of affirmance here. Although the Court rightly does not address all of them, it has found merit in the theory that the Double Jeopardy Clause is not implicated by a civil forfeiture coupled with a criminal proceeding when the forfeited property is "found to be proceeds traceable to drug dealing." Because this case can be affirmed easily on the ground I set forth above, and because civil forfeitures raise a number of difficult questions, I would defer consideration of this theory until we have a case where it would be outcome-determinative.

We risk inadvertently prejudging the legal implications of different kinds of forfeitures when we reach out to decide the issue in an across-the-board fashion. For example, the majority opinion does not make clear what level of proof is necessary to establish that property is the "fruit of the crime." If proceeds from drug trafficking contribute to the purchase of a valuable asset, such as real estate, is the entire asset forfeitable or must some allocation be performed? How should a spouse's or other party's co-ownership be

treated? What if the proceeds are the seed money for an investment that later multiplies in value exponentially? The Supreme Court may or may not address some of these issues in several cases where certiorari has been granted. *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994), *amended on denial of reh'g*, 56 F.3d 41 (1995), *cert. granted and matter consolidated with United States v. Ursery*, 59 F.3d 568 (6th Cir.1995), —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996) (Nos. 95–345, 95–346); *Michigan v. Bennis*, 447 Mich. 719, 527 N.W.2d 483 (1994), *cert. granted*, —— U.S. ——, 115 S.Ct. 2275, 132 L.Ed.2d 279 (1995).

I do not wish to be understood as either approving or disapproving the majority's application of the "fruit of the crime" theory as applied to Smith's particular circumstances. I simply believe that the more prudent course is to decide this case more narrowly, relying on this Court's well established approach, and to await both further guidance from the Supreme Court and more fully developed records before we develop any theory concerning the application of the Double Jeopardy Clause to civil forfeitures involving the proceeds of drug transactions.