Defendant contends the district court abused its discretion in awarding attorney fees, arguing it acted in good faith in attempting to give plaintiffs notice of their COBRA rights and simply made a technical mistake in not providing the correct information.

Under 29 U.S.C. § 1132(g), a district court has discretion to award "a reasonable attorney's fee and costs of action to either party" in an action filed by a plan participant or beneficiary to recover continuation coverage benefits. In exercising its discretion, a district court should consider (1) the degree of the opposing parties' bad faith or culpability; (2) the ability of the opposing parties to satisfy an award of attorney fees; (3) the deterrence value of an award of attorney fees; (4) whether the parties requesting fees sought to benefit all plan participants or to resolve a significant legal question regarding COBRA/ERISA; and (5) the relative merits of the parties' positions. *Gordon v. United States Steel Corp.,* 724 F.2d 106, 109 (10th Cir.1983); *see also Thorpe v. Retirement Plan of Pillsbury Co.,* 80 F.3d 439, 445 (10th Cir.1996). In reviewing a district court's decision to award fees under § 1132(g), we apply an abuse of discretion standard. *Id.*

Although the district court summarily stated it considered each of the above factors in deciding to award fees to plaintiffs, it did not explain its conclusion on any of the factors. Independently analyzing the five factors, we conclude the third and fifth factors weigh in favor of granting fees to plaintiffs. With regard to the third factor, we conclude a fee award might deter defendant or others from making the same or similar mistakes in the future. With regard to the fifth factor, we conclude the relative merits of plaintiffs' position versus defendant's position favor a fee award; in particular, we conclude defendant's position regarding the adequacy of the notice is indefensible.

### Attorney fee award excessive

Defendant argues the attorney fee award was excessive. Defendant claims plaintiffs' counsel spent excessive time on certain tasks and submitted time records for an unrelated collection matter. Although defendant claims it raised these issues in its objection to plaintiffs' motion for attorney fees, a copy of that objection is not in the record on appeal. Because the district court's order regarding fees, which is included in the record on appeal, does not reflect that the issue was actually raised by defendant, or ruled on, we decline to consider it for the first time on appeal. *See Wilson,* 56 F.3d at 1233.

### III.

The judgment of the district court is AFFIRMED.

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**ONE PARCEL OF REAL PROPERTY DESCRIBED AS LOT 41, BERRYHILL FARM ESTATES, etc., Defendant.**

**Tommy Lee Dunmore, Claimant–Appellant.**

**Nos. 94–3326, 94–3346, 94–3347, 94–3348, 94–3349.**

United States Court of Appeals,
Tenth Circuit.

Oct. 29, 1997.

Frances Reddis, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with her on the brief), United States Attorney's Office, Kansas City, KS, for Plaintiff–Appellee.

Elizabeth A. Phelan of Holland & Hart, LLP, Denver, CO, (Carlos A. Samour, of Holland & Hart, LLP, Denver, CO, with her on the brief), for Claimant–Appellant.

Before ANDERSON, LUCERO and MURPHY, Circuit Judges.

MURPHY, Circuit Judge.

## I. INTRODUCTION

Tommy Lee Dunmore appeals the district court's entry of summary judgment, forfeiting Dunmore's personal property to the United States pursuant to 21 U.S.C. § 881(a)(6). Dunmore contends the district court's grant of summary judgment is subject to reversal on any of the following grounds: (1) the forfeiture violated the Fifth Amendment's Double Jeopardy Clause; (2) the seizure of his real and personal property without pre-seizure notice and opportunity to be heard violated his right to due process; (3) the warrant for the arrest of personal property was a general warrant in violation of the Fourth Amendment; (4) the forfeiture of personal property was constitutionally excessive; and (5) the United States' conduct in

prosecuting this civil forfeiture action was fundamentally unfair in violation of the Fifth Amendment's Due Process Clause. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**.

## II. BACKGROUND

The United States commenced this suit on March 28, 1989, by filing a Complaint for Forfeiture *In Rem* (the "Complaint"); Motion to Take Possession, Custody and Control of Defendant Property (the "Motion"); and an Affidavit of Kenneth Wissel, Special Agent, Internal Revenue Service, Criminal Investigation Division (the "Affidavit"). The Complaint sought *in rem* forfeiture of Dunmore's home and the personal property in the home.

In the Motion, the United States asked for an order permitting it to enter Dunmore's home, make an inventory of its contents, and take "full and exclusive possession, custody and control of the entire defendant real property ... and the contents thereof." In support thereof, the United States referenced its Complaint and submitted the Affidavit. The Affidavit stated that the FBI, the Kansas City, Missouri Police Department, and the Internal Revenue Service ("IRS") were conducting an investigation and suspected that Dunmore was involved in the purchase, sale, and distribution of cocaine. According to the United States, the house and personal property had been obtained with proceeds traceable to exchanges of controlled substances and were thus forfeitable under § 881(a)(6).[1]

After reviewing the Complaint and Affidavit, a magistrate judge found there was probable cause to believe the subject property constituted drug proceeds and directed the clerk to issue a warrant for the arrest of property. The magistrate did not give Dunmore notice and a hearing or require proof of exigent circumstances to justify suspending those procedures. The clerk issued the warrant on March 28, 1989; it was executed the next day. The United States filed a *lis pendens* against the house on March 28 and served public notice by publishing a copy of the notice in three Kansas newspapers and posting it at the house. That same day, the clerk issued summonses to Dunmore and World Savings and Loan Association ("World Savings"), the mortgagee of the real property, and each was properly served.

Dunmore filed an answer and claim of ownership of the real and personal property on April 7, 1989, requesting that the Complaint be dismissed and that the property be returned to him. On May 5, 1989, World Savings filed an answer and claim of ownership of the real property. No other claims of ownership were filed. Along with his answer, Dunmore filed a motion for disclosure of the Affidavit. In response, the United States asserted the Affidavit contained information pertaining to an ongoing criminal investigation of Dunmore and that its disclosure could jeopardize the investigation.

On April 21, 1989, Dunmore moved to stay this action. His motion stated that the United States had advised Dunmore's counsel that it was conducting a criminal investigation "arising out of and including his ownership and possession" of the real property. Dunmore asserted that as long as there was a threat of a federal criminal prosecution, participation in discovery in the civil forfeiture action might jeopardize his Fifth Amendment right against self-incrimination. The district court granted the stay on June 27, 1989, ordering the United States to notify the court when the investigation was completed.

In February 1990, while the stay was in effect, the United States filed a motion for interlocutory sale of the real property pursuant to Rule E(9)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims.[2] The United States asserted that

---

**1.** 21 U.S.C. § 881(a)(6) provides as follows:

The following shall be subject to forfeiture to the United States and no property right shall exist in them: ... All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter. ...

**2.** The Supplemental Rules for Certain Admiralty and Maritime Claims are applicable to civil forfeitures under § 881. *See* 21 U.S.C.A. § 881(b), (d).

absent "great expense," the real property was subject to deterioration, decay, or injury during the pendency of the action and that an interlocutory sale was, therefore, in the best interest of the estate.[3] The United States served copies of its motion and supporting memorandum on Dunmore's counsel. Neither Dunmore's counsel nor Dunmore filed a response.

The court granted the motion for interlocutory sale on March 2, 1990, ordering the Marshal's Service to arrange for the sale of the real property and to seek the court's approval once a sales contract was obtained. The court further ordered that the net proceeds from the sale be used to pay World Savings' promissory note, the unpaid real estate taxes, and the costs the Marshal had incurred to maintain the property. The court directed the United States to deposit the remaining proceeds in the Marshal's Seized Asset Deposit Account pending the outcome of the action and to substitute the proceeds as the *res* instead of the real property.

The United States entered into a sales contract on June 25, 1990, and filed a motion for confirmation of the sale. World Savings did not object to the motion for confirmation. Dunmore, however, filed two *pro se* motions, seeking to quash the order for interlocutory sale and rental and to obtain return of the property. On August 27, after a hearing on the United States' motion for confirmation, the district court orally confirmed the interlocutory sale and approved the sales contract as proposed. The district court issued a written order of confirmation on September 21, 1990, and the real property was sold shortly thereafter. World Savings' claim was paid in full from the proceeds of the sale and was dismissed with prejudice.

On November 30, 1990, while the stay of this civil action remained in effect, the Unit-

ed States obtained an eight-count indictment against Dunmore in the Western District of Missouri. The indictment charged Dunmore with conspiracy and attempt to distribute cocaine, distribution of cocaine, income tax evasion, and money laundering. The charges were based on the same events that supported the finding of probable cause for the seizure of Dunmore's real and personal property in this civil case. The conspiracy count also alleged that Dunmore's home constituted or was derived from proceeds obtained as a result of the alleged conspiracy and was therefore subject to criminal forfeiture pursuant to 21 U.S.C.A. § 853(a)(1).

Dunmore's criminal trial was held in the Western District of Missouri. On June 11, 1991, a jury found Dunmore guilty on all counts of the indictment. By special verdict, the jury also found that the real property should be forfeited to the United States. Dunmore appealed his conviction to the United States Court of Appeals for the Eighth Circuit. While the appeal was pending, the Government obtained from the Western District of Missouri a preliminary judgment of forfeiture of the real property, satisfied the publication requirements of 21 U.S.C.A. § 853(n), and on February 13, 1992, obtained a final order of forfeiture. The Eighth Circuit affirmed Dunmore's conviction on June 30, 1992. *See United States v. Dunmore,* No. 91–2811, 1992 WL 144728 (8th Cir. June 30, 1992) (per curiam) (unpublished opinion).

Following Dunmore's conviction and sentencing in the criminal action, the United States resumed its prosecution of this civil action. On September 13, 1991, the United States moved to lift the stay and for partial summary judgment as to the personal property.[4] The court granted the motion for partial lift of stay but denied the motion for partial summary judgment in light of non-

---

**3.** In support of its motion, the United States indicated that Dunmore had been tried, convicted, and sentenced on state criminal charges and had begun serving a life sentence. In the meantime, real estate taxes, mortgage payments, and monthly expenses were accruing and threatening to impair the equity in the property. The United States claimed that an interlocutory sale would not prejudice Dunmore because World Savings could have foreclosed on its mortgage months earlier and Dunmore's inability to make the

mortgage payments made it unlikely that he could redeem the property by paying the entire balance due. The United States also asserted that "because [Dunmore] is currently imprisoned . . . he will not suffer by losing his residence."

**4.** Based on the judgment of forfeiture obtained in the criminal case, the United States moved to dismiss this civil action as to the real property on March 26, 1993. The district court granted the motion on March 31, 1993.

compliance with one of the court's local rules. The district court did, however, grant the United States leave to refile the motion.

In its motion for summary judgment, the United States sought "forfeiture of all the defendant property except the real property." The United States asserted that Dunmore's conspiracy conviction furnished probable cause to believe that the personal property constituted proceeds from that activity and that Dunmore was collaterally estopped from denying the actions of which he had been convicted. In the alternative, the United States asserted that the Affidavit and accompanying exhibits in the civil case and the testimony at the criminal trial established the requisite probable cause.

Dunmore filed a comprehensive response to the United States' motion for summary judgment. He argued, *inter alia,* that the search and seizure of the property violated the Fourth, Fifth, and Fourteenth Amendments and asserted that "no exigent circumstances" justified the search and seizure. Dunmore also asserted that without prior notice and hearing or, in the alternative, without a prompt post-deprivation hearing, the seizure of the property violated his due process rights. Finally, Dunmore claimed that the prosecution of the civil forfeiture case after his criminal conviction violated the Double Jeopardy Clause.

By order dated June 4, 1993, the district court granted the United States' summary judgment motion. The district court found the United States had submitted a "plethora of documentary evidence and testimony from Dunmore's criminal trial," the Wissel affidavit, and other affidavits which established probable cause that Dunmore had purchased the personal property "with the proceeds of illegal drug trafficking" and that "the personal property at issue ... constitutes the proceeds of criminal activity forfeitable under 21 U.S.C. § 881(a)(6)." Furthermore, the district court found that Dunmore had not met his burden of showing that the personal property was "purchased with money from a legitimate source." Finally, the district court rejected all of Dunmore's other arguments, including his due process and double jeopardy arguments.

Following the district court's ruling, Dunmore filed a number of post-judgment motions seeking to set aside the decision. He argued, *inter alia,* that the forfeiture violated the Excessive Fines Clause of the Eighth Amendment and denied his rights to due process, a fair hearing, and a fair and impartial trial. He further argued that these constitutional violations entitled him to an injunction, declaratory relief, and money damages. The court denied all of these motions by order dated August 25, 1994.

## III. ANALYSIS

### A. Double Jeopardy

■■ Dunmore argues that the forfeiture of his interest in the personal property following his prosecution, conviction, and sentencing for criminal charges arising from the same conduct violated the Fifth Amendment's Double Jeopardy Clause. The trial court's determination that the forfeiture of Dunmore's personal property did not violate the Double Jeopardy Clause is a question of law this court reviews *de novo. See United States v. Rodriguez–Aguirre,* 73 F.3d 1023, 1025 (10th Cir.1996).

Dunmore's double jeopardy argument is foreclosed by the Supreme Court's recent decision in *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). In *Ursery,* the Court held that "*in rem* civil forfeitures [under 21 U.S.C. § 881(a)(6) ] are neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause." *Id.* at ——, 116 S.Ct. at 2149.

### B. Notice and Opportunity to be Heard

■ Dunmore asserts that the seizure of his real and personal property without prior notice and opportunity to be heard violated his Fifth Amendment right to due process. "The ultimate conclusion of whether [Dunmore's] Fifth Amendment due process rights have been violated is subject to *de novo* review." *United States v. Thody,* 978 F.2d 625, 628 (10th Cir.1992).

#### 1. Real Property

■ Dunmore argues that the forfeiture of his real property is invalid because the Unit-

ed States failed to provide him prior notice and an opportunity to be heard before the seizure. *See generally United States v. James Daniel Good Real Property*, 510 U.S. 43, 45–47, 114 S.Ct. 492, 497, 126 L.Ed.2d 490 (1993) ("[I]n the absence of exigent circumstances, the Due Process Clause of the Fifth Amendment prohibits the Government in a civil forfeiture case from seizing real property without first affording the owner notice and an opportunity to be heard."). In light of this violation, Dunmore asks this court to (1) reverse the order of forfeiture and remand the case to the district court with directions that the district court dismiss the forfeiture action without prejudice, or, in the alternative, (2) reverse the order of forfeiture and remand the case to the district court for the suppression of all evidence seized in violation of *James Daniel Good*, a new forfeiture proceeding for the real property, and a hearing on possible damages to Dunmore as a result of the United States' violation of *James Daniel Good*.

The most basic problem with Dunmore's arguments is that the forfeiture of his real property did not take place in this case, but instead took place in his criminal trial in the Western District of Missouri. As noted above, although the Complaint originally prayed for the forfeiture of Dunmore's real property, the United States eventually obtained the criminal forfeiture of that real property at Dunmore's criminal trial. Based on the judgment of forfeiture obtained in the criminal case, the United States moved to dismiss this civil action as to the real property on March 26, 1993. The district court granted the motion on March 31, 1993.

Dunmore has not identified and we have been unable to find any precedent that would allow this court to reverse the order of forfeiture of the real property entered in the Western District of Missouri and remand it to the District of Kansas for new forfeiture proceedings. Because each of Dunmore's alternative remedies explicitly implicate the validity of the judgment of forfeiture entered in the Western District of Missouri, Dunmore is obligated to bring his claims for relief in that court.

*2. Personal Property*

■ Dunmore also argues that the forfeiture of his personal property is similarly invalid because the United States failed to comply with *James Daniel Good* before seizing his furniture and furnishings. Dunmore's argument fails, however, because "no preseizure notice or hearing is required before a federal agency may seize personal property subject to forfeiture for violation of federal drug laws." *Madewell v. Downs*, 68 F.3d 1030, 1038 (8th Cir.1995). As noted by the Eighth Circuit, the Supreme Court has consistently held that the United States need not provide a pre-deprivation hearing before seizing personal property pursuant to customs or drug forfeiture provisions. *See United States v. $8,850 in United States Currency*, 461 U.S. 555, 562 & n. 12, 103 S.Ct. 2005, 2011 & n. 12, 76 L.Ed.2d 143 (1983); *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 676–80, 94 S.Ct. 2080, 2088–90, 40 L.Ed.2d 452 (1974). Although the Supreme Court reached a contrary result with respect to real property in *James Daniel Good*, the Court was very careful in that case to limit its holding to real property. Furthermore, the Court was very careful in *James Daniel Good* not to overrule its prior precedent relating to the seizure of personal property. Accordingly, this court joins the Eighth Circuit in concluding that *Calero–Toledo* remains the law of the land. *See Madewell*, 68 F.3d at 1038–39 & n. 8.

Because the Due Process Clause does not obligate the United States to provide pre-deprivation notice and opportunity to be heard before the seizure of personal property, Dunmore's due process claims relating to the seizure of his personal property necessarily fail.

### C. Warrant for Arrest of Personal Property

■■ Dunmore asserts that the warrant for the arrest of his personal property was a general warrant in violation of the Fourth Amendment and that, consequently, the United States could not rely on any evidence seized under the warrant. This court reviews *de novo* a determination that a warrant is sufficiently particular. *United States v.*

*Janus Indus.*, 48 F.3d 1548, 1554 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 87, 133 L.Ed.2d 44 (1995); *United States v. Williamson,* 1 F.3d 1134, 1135 (10th Cir.1993).

The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As the Supreme Court has explained,

> "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

*Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511–12, 13 L.Ed.2d 431 (1965) (quoting *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927)). The warrant for the arrest of personal property in this case complied with the Fourth Amendment's particularity requirement.

The Affidavit submitted in support of the application for the warrant for arrest of property sets out in extensive detail the investigation of Dunmore for drug trafficking. The fifty-one page Affidavit began by describing the activities of confidential informant Joseph Rector, a distant relative of Dunmore. The Affidavit recited how Rector had been recruited as a confidential informant and detailed Rector's extensive drug dealings with Dunmore over the previous several years. The Affidavit then set forth a recorded conversation between Rector and Dunmore on June 25, 1987, when Dunmore discussed the large cashflow generated by his drug trafficking business and the property that he had purchased with that money, including the subject house and its contents.

The Affidavit went on to detail how Dunmore was apparently laundering the proceeds of his drug trafficking business by purchasing both cashier's checks and property, including the house and contents, under the name of his uncle Thomas Stiles. The Affidavit referenced attached surveillance photographs from banks that depicted Dunmore purchasing cashier's checks under the name of Thomas Stiles. It also recounted interviews with employees from a number of furniture stores which identified Dunmore as the purchaser of the furniture and furnishings at issue here. Those same employees indicated that Dunmore had purchased the furniture and furnishings under the name of Thomas Stiles and had paid for the purchases with cashier's checks with Thomas Stiles listed as the remitter.

Finally, the Affidavit recounted an extensive background investigation of the financial conditions of both Thomas Stiles and Dunmore. That investigation demonstrated Thomas Stiles never lived in the subject house and did not have the financial means to purchase either the house or its belongings. Furthermore, the investigation demonstrated that Dunmore had no employment history for the prior thirteen fiscal quarters and had not filed a federal income tax return since some time before 1970.[5]

In light of the Affidavit, a magistrate judge found that probable cause existed to believe the real property and all its furnishings, fixtures, and equipment were "proceeds traceable to exchanges of controlled substances in violation of subchapter I of Title 21, United States Code, subject to seizure pursuant to 21 U.S.C. § 881." Based on that conclusion, the magistrate judge authorized a warrant for the arrest of the defendant real property

---

**5.** In light of the extensively detailed investigation, the Affidavit concluded as follows:

Based on the information I obtained from documents obtained in the investigation of TOMMY LEE DUNMORE, as a result of my participation in the investigation, and from individuals interviewed by myself and other law enforcement agencies, I have concluded that TOMMY LEE DUNMORE, has received money or other things of value in exchange for controlled substances in violation of subchapter I of Title 21, United States Code; that he has had no other visible means of income in

the last several years, particularly the years 1985 through the present, which would have permitted him to purchase the items described herein as being purchased by him, including the purchase of the residence at 6401 W. 181st Street, Stilwell, Kansas, and the fixtures, furnishings, and equipment located in that residence; and that he purchased the residence and fixtures, furnishings, and equipment with the proceeds of the illegal exchange of money or other things of value for controlled substances in violation of subchapter I of Title 21, United States Code.

and "all fixtures, furnishings, and equipment within the buildings, appurtenances, and improvements, including but not limited to, a dining room table and chairs, living room furniture, a marble table, marble accessories, clocks, a grandfather clock, draperies, oriental rugs, and a 'muskrat' throw."

On appeal, Dunmore contends that the warrant is an invalid general warrant because it allowed the United States to seize all of the personal property in the house without any limitation as to the kind of property to be seized or any description as to how the property might be related to the alleged underlying criminal offense. The basic problem with Dunmore's argument is that the magistrate judge found probable cause to believe that all of the furnishings in the house were the converted proceeds of Dunmore's drug trafficking business. There was sufficient evidence in the Affidavit upon which to base the probable cause conclusion: (1) Dunmore had admitted to Rector that the house and all of its furnishings were purchased with drug proceeds; (2) many of the identified furnishings of the home had been purchased by Dunmore in the name of his uncle Thomas Stiles, in an apparent effort to launder his drug proceeds; and (3) neither Stiles nor Dunmore had lawful means to purchase furnishings for the home. In light of the magistrate judge's unchallenged finding that probable cause existed to believe all of the furniture and furnishings in the house were purchased with drug proceeds and the virtual impossibility of cataloging every single fixture or furnishing in the house, the warrant was as particular as it could be and, therefore, comported with the requirements of the Fourth Amendment. *See Janus,* 48 F.3d at 1554 (approving affidavit and warrant that were as specific as circumstances would allow); *United States v. Emmons,* 24 F.3d 1210, 1216 (10th Cir.1994) (" 'When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking.' ") (quoting *United States v. Harris,* 903 F.2d 770, 775 (10th Cir.1990)).

## D. Eighth Amendment

■ Dunmore asserts that the forfeiture of his personal property violates the Excessive Fines Clause of the Eighth Amendment. This court reviews Dunmore's Eighth Amendment claim *de novo. See United States v. One Parcel Property,* 106 F.3d 336, 338 (10th Cir.1997) (per curiam); *United States v. 829 Calle de Madero,* 100 F.3d 734, 736 (10th Cir.1996).

■ Before reaching the merits, this court must address whether Dunmore waived his Eighth Amendment claim by failing to properly raise it below. After the district court entered its decision forfeiting Dunmore's personal property, Dunmore filed a timely motion for a new trial pursuant to Fed. R.Civ.P. 59. Approximately ten days later, while Dunmore's Rule 59 motion was still pending in the district court, the Supreme Court decided *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In *Austin,* the Supreme Court concluded that forfeitures under 21 U.S.C. §§ 881(a)(4) and (a)(7) are subject to the Eighth Amendment's Excessive Fines Clause. *See id.* at 621–22, 113 S.Ct. at 2811–12. Relying upon that newly issued decision, Dunmore, proceeding *pro se,* filed a new motion styled as follows: "Motion to Annul the Judgment and Return All Property Herewith in that the Judgment Rendered is Clearly in Violation of the Excessive Fines Clause of the Eighth Amendment of the United States Constitution." After denying Dunmore's Rule 59 motion on the merits, the district court refused to address Dunmore's Motion to Annul because it was "filed after the issues in the case had been resolved by the court's Memorandum and Order granting summary judgment in favor of the plaintiff. That order closed the case and final judgment was entered on June 17, 1993."

Given Dunmore's *pro se* status and the timing of the issuance of *Austin,* the district court erred in refusing to consider Dunmore's Eighth Amendment claims. *See United States v. All Assets & Equip. of W. Side Bldg. Corp.,* 58 F.3d 1181, 1191–92 (7th Cir.1995) (holding that district court abused its discretion in refusing to consider due process challenge based on Supreme Court's newly announced decision in *Daniel Good,*

even though challenge was first raised in claimants' reply brief in support of motion for reconsideration of final judgment), *cert. denied sub nom., Penny v. United States,* — U.S. —, 116 S.Ct. 698, 133 L.Ed.2d 656 (1996); *see also United States v. One 1978 Piper Cherokee Aircraft,* 91 F.3d 1204, 1210 (9th Cir.1996) (considering Excessive Fines claim raised for first time on appeal in order to avoid possibility of manifest injustice). As a consequence, Dunmore has not waived his Eighth Amendment claim.

Notwithstanding both parties' suggestion of remand should this court determine that the district court erred in refusing to address the Excessive Fines issue, we conclude that Dunmore's claim can be resolved as a matter of law.[6]

▮ In granting the United States' summary judgment motion and forfeiting Dunmore's personal property to the United States, the district court found the United States had submitted a "plethora" of evidence that Dunmore had purchased the personal property "with the proceeds of illegal drug trafficking" and that "the personal property ... constitute[d] the proceeds of criminal activity forfeitable under 21 U.S.C. § 881(a)(6)." In light of this unappealed finding,[7] the dispositive question is whether the § 881(a)(6) forfeiture of drug proceeds can ever be excessive under the Eighth Amendment. Consistent with the rulings of other circuits, we answer the question in the negative and hold as a matter of law that forfeiture of drug proceeds pursuant to § 881(a)(6) can never be constitutionally excessive. *See United States v. Tilley,* 18 F.3d 295, 299–300 (5th Cir.1994); *see also Smith v. United States,* 76 F.3d 879, 882 (7th Cir. 1996); *United States v. $184,505.01 in United States Currency,* 72 F.3d 1160, 1168–69 (3d Cir.1995), *cert. denied sub nom., McGlory v. United States,* — U.S. —, 117 S.Ct. 48, 136 L.Ed.2d 13 (1996); *United States v. Salinas,* 65 F.3d 551, 553 (6th Cir.1995); *United States v. Wild,* 47 F.3d 669, 676 (4th

Cir.), *cert. denied sub nom., Greenfield v. United States,* — U.S. —, 116 S.Ct. 128, 133 L.Ed.2d 77 (1995); *United States v. Alexander,* 32 F.3d 1231, 1236 (8th Cir.1994).

As aptly noted by the Fifth Circuit, "[t]he forfeiture of proceeds of illegal drug sales serves the wholly remedial purposes of reimbursing the government for the costs of detection, investigation, and prosecution of drug traffickers and reimbursing society for the costs of combating the allure of illegal drugs, caring for the victims of the criminal trade when preventative efforts prove unsuccessful, lost productivity, etc." *Tilley,* 18 F.3d at 299; *cf. Ursery,* — U.S. at —— ——, 116 S.Ct. at 2148–49 ("To the extent that § 881(a)(6) applies to 'proceeds' of illegal drug activity, it serves the additional nonpunitive goal of ensuring that persons do not profit from their illegal acts."). Furthermore, on a macroeconomic level, the estimated proceeds of illegal drug sales are roughly equivalent to the yearly costs drugs inflict on society and government. *See Tilley,* 18 F.3d at 299 (setting forth estimate that illegal drug sales produce approximately $80 to $100 billion per year while exacting costs of $60 to $120 billion per year); *see also Smith,* 76 F.3d at 882 ("[P]roceeds forfeitures can never be out of proportion to the 'loss' suffered by the government or society. If ... certain property ... is forfeitable pursuant to § 881(a)(6) as *proceeds* of drug trafficking, it is directly equal [to] that part of the profits with which it was purchased. It directly represents at least a portion of the profits and can thus be less than or equal to society's loss, but not more than the loss. For this reason, there is no argument based on proportionality or excessiveness available...."). Finally, on a microeconomic level, the forfeiture of drug proceeds, contrasted with the types of properties considered by the Supreme Court in *Austin,* extracts from the particular drug trafficker with some precision an amount of money equivalent to the costs that the drug dealer has imposed on society. *See Tilley,* 18 F.3d at 300.[8] Be-

---

6. Dunmore's Motion for Leave to Respond to Supplemental Authority Cited at Oral Argument is hereby granted.

7. Dunmore does not raise in his brief any challenges to the district court's finding of probable cause or its rejection of his claim of innocent ownership.

8. As noted by the Fifth Circuit,

[T]he forfeitures of conveyances and real estate have no correspondence to, or proportionality with, the costs incurred by the government and society because of the large and unpredictable variance in the values of real estate and conveyances in comparison to the harm inflicted

cause the amount of proceeds produced by an individual drug trafficker is always roughly equivalent to the costs that drug trafficker has imposed on society, the forfeiture of those proceeds can never be constitutionally excessive. *See id.*

Dunmore's personal property was forfeited pursuant to § 881(a)(6) as proceeds of drug transactions. Therefore, the forfeiture is proportionate as a matter of law and his Eighth Amendment objection is rejected.[9]

### E. Fundamental Fairness in the Civil Forfeiture

Dunmore asserts that the United States' conduct in prosecuting this civil forfeiture was fundamentally unfair and thus violated the Fifth Amendment's Due Process Clause. Dunmore lists the following alleged due process violations: (1) the sealing of the Affidavit occasioned a prejudicial delay in these forfeiture proceedings; (2) the Complaint was not sufficiently particular to meet the requirements of Supplemental Federal Rule of Civil Procedure E(2)(a); (3) the United States sought and obtained a protective order which prevented him from discovering the basis of this forfeiture action; (4) his real property was sold pursuant to an interlocutory order before he had a chance to challenge this forfeiture action on the merits; and (5) the United States used the pendency of the civil forfeiture action to deny him his right to due process in his criminal proceedings. These Fifth Amendment claims are reviewed *de novo*. *See Thody*, 978 F.2d at 628.

■■■ Dunmore's contention of delay caused by the sealing of the Affidavit is ill-conceived; it was Dunmore, not the United States or the district court, who delayed this action by asking that the proceedings be stayed. After the United States informed him that he was also the subject of an ongoing criminal investigation, Dunmore sought a stay of the forfeiture proceedings on the grounds that

> it would be unfair to require ... Dunmore to undergo discovery proceedings including interrogatories and depositions in this action, and perhaps requiring him to exercise his Constitutional Rights under the *Fifth Amendment* of the United States Constitution to refuse to answer questions that might tend to incriminate him in order to protect himself from the proposed and anticipated criminal charge.

Accordingly, the significant delay in this proceeding was occasioned by Dunmore's actions, not the actions of the United States.

■■■ Dunmore argues that he was forced to request a stay by the United States' decision to proceed contemporaneously against him civilly and criminally. He has not cited, however, and this court has not found any case holding that the United States is precluded from exercising its rights under § 881 contemporaneous with a criminal investigation. This court affirmatively rejects Dunmore's call to create such a blanket rule. A thorough review of the record, especially when viewed in light of Dunmore's request to stay the civil proceeding during the pendency of the criminal investigation and prosecution, reveals that Dunmore's due process rights

upon government and society by the criminal act. Unlike the real estate forfeiture statute that can result in the confiscation of the most modest mobile home or the stateliest mansion, the forfeiture of drug proceeds will always be directly proportional to the amount of drugs sold. The more drugs sold, the more proceeds that will be forfeited.
*United States v. Tilley*, 18 F.3d 295, 300 (5th Cir.1994).

9. Contrary to Dunmore's assertion, this court's decision in *United States v. 9844 South Titan Court*, 75 F.3d 1470 (10th Cir.), *overruled in part by United States v. Ursery*, — U.S. —, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), does not compel a different result. In *9844 South Titan Court*, a panel of this court applied the Supreme Court's Eighth Amendment decision in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and held that the forfeiture of drug proceeds was punishment for double jeopardy purposes. *See id.* 75 F.3d at 1486; *see also Ursery*, — U.S. at —, 116 S.Ct. at 2149 (holding that without regard to whether forfeiture constitutes punishment under the Eighth Amendment, it does not constitute punishment under the Fifth Amendment). In deciding that issue, however, the *9844 South Titan Court* panel specifically reserved the issue before the court today, stating as follows: "We express no opinion as to *Tilley*'s conclusion that proceeds forfeiture can never be excessive under the Eighth Amendment." *Id.* 75 F.3d at 1486 n. 14. It is that question left open by *9844 South Titan Court* which the court answers today.

were not violated by the actions of the United States in this case.

 Dunmore contends that the Complaint was not sufficiently particular to meet the requirements of Supplemental Federal Rule of Civil Procedure E(2)(a). Tenth Circuit precedent appropriately admonishes that "in order to comport with Rule E(2)(a)'s requirement of particularity, the complaint in a civil forfeiture action under section 881 must allege specific facts sufficient to support an inference that the property is subject to forfeiture under the statue." *United States v. $39,000 in Canadian Currency,* 801 F.2d 1210, 1219 (10th Cir.1986). Although the Complaint in this case was not sufficiently particular upon filing, under the particular facts of this case, the United States' motion for partial summary judgment and its attachments satisfied the requirements of Rule E(2)(a).

Shortly after the filing of the Complaint, Dunmore filed a motion for disclosure of the Affidavit. In response to that motion, the United States informed Dunmore that it wished to keep the Affidavit sealed because it contained information relevant to an ongoing criminal investigation of Dunmore. In light of this disclosure, Dunmore moved to stay the civil forfeiture proceeding during the pendency of any further criminal investigation. The district court granted the stay and ordered the United States to inform the court when the criminal investigation was complete. Accordingly, during the pendency of the stay requested by Dunmore, the United States was under no duty to file a more particularized complaint and Dunmore was not disadvantaged because he was not obligated to actively defend the action.

After Dunmore's conviction in Missouri on federal drug charges, the United States filed a motion to lift the stay. That same day, the United States filed a motion for partial summary judgment with attachments which clearly and particularly informed Dunmore of the basis of the United States' claim for forfeiture of the personal property. Accordingly, at the very moment the stay was lifted, Dunmore had all of the information which a more particularized complaint would have

provided. Thus, under the particular facts of this case, the United States' summary judgment motion satisfied the requirements of Rule E(2)(a) and negated the need for a more particularized complaint.

 As to Dunmore's allegation that the United States violated his due process rights by seeking a stay of discovery, we note only that the United States does not deny a litigant's due process rights by seeking a court order to protect itself from burdensome and/or frivolous discovery requests. The discovery requests at issue here included a large number of interrogatories directed to non-parties in apparent violation of Fed. R.Civ.P. 33,[10] as well as a request for the production of documents that the United States contends relate to matters that were fully and fairly litigated in Dunmore's criminal trial. In light of the nature of Dunmore's requests, the United States asserts that the district court did not abuse its discretion in refusing to allow the discovery. *See GWN Petroleum Corp. v. Ok–Tex Oil & Gas, Inc.,* 998 F.2d 853, 858 (10th Cir.1993) (noting that a district court's discovery rulings are reviewed for abuse of discretion).

 Based on the record before this court, Dunmore has not met his burden of demonstrating that the district court abused its discretion in refusing to grant his discovery requests. The interrogatories propounded by Dunmore were apparently directed to persons not parties to this litigation in violation of Fed.R.Civ.P. 33. *See University of Texas v. Vratil,* 96 F.3d 1337, 1340 (10th Cir.1996) ("Under Fed.R.Civ.P. 33(a), interrogatories may only be directed to a party to an action."). More importantly, it is clear from the record before this court that Dunmore was fully apprised of the basis for the United States' forfeiture action through the United States' motion for partial summary judgment, which included as attachments the Affidavit and both testimony and exhibits from Dunmore's criminal trial. Dunmore's contention that the discovery limitations impeded his ability to learn "the most basic information concerning the Government's justification for its claims" is clearly without merit. The district court did not abuse its

---

**10.** Fed.R.Civ.P. 33 provides as follows: "Without leave of court or written stipulation, any party *may serve upon any other party* written interrogatories...."

discretion in refusing to grant Dunmore's discovery requests.

This court can resolve Dunmore's two remaining due process contentions in relatively short order. For the reasons set out in III.B.1, all claims that implicate the validity of the forfeiture of Dunmore's real property should have been brought in the Western District of Missouri as a defense to the criminal forfeiture of that property. As to Dunmore's contention that the United States used this civil proceeding to deny him his right to due process in his criminal trial, we note only that those issues should have been raised by Dunmore in his criminal trial in the Western District of Missouri and his appeal to the Eighth Circuit.

## IV. CONCLUSION

The judgment of the United States District Court for the District of Kansas is hereby AFFIRMED.[11]

11. Dunmore's "Motion to Ensure Completeness of the Record," "Mandamus" petition, and pleading styled "Re: In the Matter of the Search of a Single Family Dwelling Located at 6401 West 181st Street, Stilwell, Kansas, Criminal Case No.89–2023M–01—Circuit Court No____" are all hereby denied. We note, however, that the court has had available to it all of the records in the case and has reviewed everything necessary to a reasoned disposition of this case.